| | | |
|---|---|---|
| EVIN KING, | ) | CASE NO. 1:18-cv-02353 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE DAN AARON POLSTER |
| vs. | ) | |
| | ) | Magistrate Judge Jonathan D. Greenberg |
| ROBERT MATUSZNY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

---

## DEFENDANTS CUYAHOGA COUNTY, KAY MAY, AND ELIZABETH K. BALRAJ, M.D.'S MOTION TO DISMISS

---

Defendants Cuyahoga County, Kay May, and Elizabeth K. Balraj, M.D. move this Honorable Court for an Order dismissing all of Plaintiff's claims pursuant Fed. R. Civ. P. 12(b)(6). Plaintiff has failed to state a plausible claim for relief against Defendants. This Motion is supported by the accompanying memorandum.

Respectfully submitted,

MICHAEL C. O'MALLEY, PROSECUTING ATTORNEY OF CUYAHOGA COUNTY, OHIO

By:  /s/ Brendan D. Healy

---

BRENDAN D. HEALY (0081225)
Assistant Prosecuting Attorney
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113
Tel: (216) 698-6447
Fax: (216) 443-7602
Email: bhealy@prosecutor.cuyahogacounty.us
Attorney for Defendants Cuyahoga County;
Kay May, and Elizabeth K. Balraj, M.D.

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES ... 1

ARGUMENT SUMMARY ... 1

STATEMENT OF FACTS ... 2

ARGUMENT ... 3

I. PLAINTIFF'S FEDERAL INDIVIDUAL-CAPACITY CLAIMS AGAINST THE CORONER DEFENDANTS SHOULD BE DISMISSED ... 4

    A.     Plaintiff's Complaint fails to state a plausible due process claim Under the Fourteenth Amendment. ... 5

    B.     Plaintiff fails to state a plausible malicious prosecution claim under the Fourth Amendment. ... 7

    C.     Defendants Balraj and May are entitled to qualified immunity. ... 8

    D.     Plaintiff's fails to plead any plausible claim for civil conspiracy. ... 10

    E.     Plaintiff fails to state a plausible claim for failing to intervene. ... 11

    F.     Plaintiff fails to state a plausible claim for supervisory liability. ... 12

II. PLAINTIFF'S COMPLAINT FAILS TO STATE ANY PLAUSIBLE CLAIM FOR MONELL LIABILITY. ... 14

III. PLAINTIFF'S STATE LAW CLAIMS LACK PLAUSIBILITY AND SHOULD BE DISMISSED. ... 16

    A.     Plaintiff's criminal prosecution did not terminate in his favor; therefore, his state law malicious prosecution claim must fail. ... 16

    B.     Plaintiff's Intentional Infliction of Emotional Distress is baseless. ... 17

    C.     Plaintiff's civil conspiracy claim suffers from the same pleading deficiencies as his federal claim. ... 18

    D.     The County is entitled to immunity under R.C. Chapter 2744. ... 18

    E.     Plaintiff's indemnification claim is not a separate cause of action. ... 19

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                    **<u>Page</u>**

*Adair v. Charter County of Wayne*, 452 F.3d 482 (6th Cir. 2006) ………………………… 14

*Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034 (1987) ………………………… 7

*Ash v. Ash*, 72 Ohio St. 3d 520, 651 N.E.2d 945 (1995) ………………………… 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) ………………………………… *passim*

*Bassett v. NCAA*, 528 F.3d 426 (6th Cir. 2008) ………………………………… 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) ………………………… *passim*

*Briscoe v. Lahue*, 460 U.S. 325, 103 S.Ct. 1108 (1983) ………………………………… 5

*City of Canton v. Harris*, 489 U.S. 378 (1989) ………………………………… 9; 14

*Collins v. Clancy*, S.D.Ohio No. 1:12-cv-152-HJW, 2014 U.S. Dist. LEXIS 56816
   (Apr. 23, 2014) ………………………………………………… 16

*Colson v. City of Alcoa*, E.D.Tenn. No. 3:16-CV-377, 2017 U.S. Dist. LEXIS 66339
   (May 2, 2017) ………………………………………… 12

*Craft v. Billingslea*, E.D.Mich. No. 17-cv-12752, 2017 U.S. Dist. LEXIS 200275
   (Dec. 6, 2017) ………………………………………………… 8

*D'Ambrosio v. Marino*, N.D.Ohio No. 1:11 CV 933, 2012 U.S. Dist. LEXIS 141516
   (Oct. 1, 2012) …………………………………………………………… 6; 9-10

*Doe v. Claiborne County, Tenn.*, 103 F.3d 495 (6th Cir.1996) ………………………… 15

*Ekstrom v. Cuyahoga Cty. Community College*, 150 Ohio App.3d 169, 2002-Ohio-6228,
   779 N.E.2d 1067(8th Dist.2002) ………………………………… 17

*Elder v. Holloway*, 510 U.S. 510 (1994) ……………………………………….. 9

*Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993) ………………………… 14

*Ghaster v. City of Rocky River*, 8th Dist. Cuyahoga No. 99779, 2013-Ohio-5587 ……………… 19

*Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507 (6th Cir. 1999) ………………………… 5

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) ………………………… 10

*Gutierrez v. Lynch*, 826 F.2d 1534 (6th Cir. 1987) .................................................. 11

*Hager v. Pike County Bd. of Educ.*, 286 F.3d 366 (6th Cir. 2002) ........................... 14

*Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982) ...................................... 9

*Harris v. Lafler*, 553 F.3d 1028 (6th Cir. 2009) ........................................................ 9

*Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982) ........................................... 12

*Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534 (1991) ............................................. 9

*Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419, 650 N.E.2d 863 (1995) ......... 18

*Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555 (1995) ............................................ 9

*LeFever v. Ferguson*, 956 F.Supp.2d 819 (S.D.Ohio 2013) ....................................... 10

*Manuel v. City of Joliet*, 137 S.Ct. 911, 197 L.Ed.2d 312 (2017) ............................. 7

*Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898
       (6th Cir.2004) .................................................................................................... 15

*McKee v. McCann*, 2017-Ohio-7181, 95 N.E.3d 1079 (8th Dist.) ........................... 19

*Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005) ...................................... 14-15

*Miller v. Maddox*, 866 F.3d 386 (6th Cir.2017) ....................................................... 7

*Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985) ................................ 8

*Mobley v. City of Detroit*, 938 F.Supp.2d 669 (E.D.Mich.2012) ............................... 8

*Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018 (1978) ............. *passim*

*Montgomery v. Bobby*, 654 F.3d 668 (6th Cir.2011) ................................................ 19

*Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 60 S.Ct. 968 (1940) ......... 15

*Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601,
       913 N.E.2d 939 ................................................................................................. 19

*O'Neil v. State*, 13 Ohio App.3d 320, 469 N.E.2d 1010 (10th Dist.1984) ........... 15-16

*Palshok v. Jarrett*, 32 Fed. Appx. 732 (6th Cir.2002) ............................................ 16

*Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir.2016) ................................... 12-13

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808 (2009) ............................................. 9

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292 (1986) ........................... 14

*Price v. Austintown Local School Dist. Bd. of Edn.*, 178 Ohio App.3d 256, 2008-Ohio-4514, 897 N.E.2d 700 (7th Dist.) ................................................. 19

*Reno v. Centerville*, 2d Dist. Montgomery No. 20078, 2004-Ohio-781 ......................... 19

*Revis v. Meldrum*, 489 F.3d 273 (6th Cir. 2007) ......................................................... 10

*Robertson v. Lucas*, 753 F.3d 606 (6th Cir.2014) ....................................................... 11

*Salehpour v. Univ. of Tenn.*, 159 F.3d 199 (6th Cir. 1998) ...................................... 13

*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001) ............................................... 9

*Scanlon v. Gordon F. Stofer & Bro. Co.*, 8th Dist. Cuyahoga Nos. 55467, 55472, 1989 Ohio App. LEXIS 2528, (June 22, 1989) .................................... 18

*Searcy v. City of Dayton*, 38 F.3d 282 (6th Cir.1994) ............................................... 14

*Sheffey v. City of Covington*, 564 F. App'x 783 (6th Cir. 2014) ............................... 12

*Singleton v. City of New York*, 632 F.2d 185 (2d. Cir. 1980) .................................... 8

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) ........................................................ 7

*Thornton v. City of Columbus*, 171 F. Supp. 3d 702 (S.D. Ohio 2016) ..................... 8

*Trussell v. General Motors Corp.*, 53 Ohio St. 3d 142, 559 N.E.2d 732 (1990) ..... 16-18

*Trapp v. Kimpel*, S.D.Ohio No. 3:13-cv-18, 2013 U.S. Dist. LEXIS 120490 (Aug. 23, 2013) .................................................................... 8

*Turner v. Scott*, 119 F.3d 425 (6th Cir. 1997) ........................................................... 12

*Virgil v. City of Newport*, E.D.Ky. No. 16-224-DLB-CJS, 2018 U.S. Dist. LEXIS 3708 (Jan. 9, 2018) .................................................................. 12

*Waters v. City of Morristown*, 242 F.3d 353 (6th Cir. 2001) .................................... 14

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997) ................................................... 5

*Wells v. City of Dearborn Heights*, 538 F. App'x 631 (6th Cir. 2013) ..................... 12

*Wilson vs. Stark County Department of Human Services*, 70 Ohio St. 3d 450, 639 N.E.2d 105 (1994) .................................................... 18-19

*Ontha v. Rutherford Cty., Tenn.*, 222 F. App'x 498 (6th Cir. 2007)  ......................... 12

## Codes/Statutes

52 U.S.C. §1983  ............................................................................ *passim*

R.C. 313.17  ............................................................................ 8

R.C. 2744.02  ............................................................................ 1; 18; 19

R.C. 2744.07  ............................................................................ 19

## Rules

Fed. R. Civ. P. 12(b)(6)............................................................................ 1

## MEMORANDUM IN SUPPORT

## STATEMENT OF ISSUES

I.   Whether Plaintiff's federal and state law claims should be dismissed as implausible under *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) when he has relied on threadbare recitals of the elements of his legal claims and conclusory, speculative, and inaccurate allegations?

II.  Whether Defendants Dr. Elizabeth K. Balraj and Kay May are entitled to qualified immunity concerning Plaintiff's claims under 42 U.S.C. §1983 when their alleged conduct did not violate Plaintiff's clearly established constitutional rights?

III. Whether Defendant Cuyahoga County is entitled to immunity under R.C. Chapter 2744 when there is no exception to immunity under R.C. 2744.02(B) for intentional torts, and Plaintiff has only alleged intentional tort claims against the County?

## ARGUMENT SUMMARY

Defendants Kay May (former Forensic Serologist for Cuyahoga County); Dr. Elizabeth K. Balraj (former County Coroner); and Cuyahoga County (collectively "Coroner Defendants")[1] should never have been sued for violating Plaintiff Evin King's rights under federal and state law. Plaintiff's federal and state law claims are based on implausible allegations of misconduct and should be dismissed pursuant to *Iqbal*. In addition, Defendants May and Balraj are entitled to qualified immunity because none of the alleged constitutional violations were clearly established at the time of their alleged misconduct. Finally, the County is entitled to immunity under R.C. 2744.01 et seq. concerning Plaintiff's state law claims. Accordingly, Plaintiff's claims should be dismissed pursuant to Fed. Civ. R. 12(b)(6).

---

[1]      Plaintiff sued Challener passed away on September 2, 2018, and this Court dismissed him from this case on November 30, 2018.

1

## STATEMENT OF FACTS

On the morning of June 22, 1994, the lifeless body of 41-year Crystal Hudson was discovered by her minor daughters in her apartment bedroom closet, naked and covered by a coat. Plaintiff Evin King was in Hudon's apartment at the time, placidly watching television and seemingly unaffected by the foul stench of death immediately apparent upon entry to the premises. Ms. Hudson's body was transported to the County Coroner's Office that same day, where an autopsy was performed by former Chief Deputy Coroner Robert Challener; trace evidence was examined by former Forensic Serologist Kay May; and former Coroner Elizabeth K. Balraj ruled on June 23, 1994 that Ms. Hudson died as a result of ligature strangulation, a homicide. The Coroner's office additionally determined that sperm deposited within the decedent's body was not from Plaintiff.

Plaintiff was tried for murder in February 1995, where Challener and May, whose qualifications were stipulated to by Plaintiff, testified to their forensic findings, including their opinion that it would be reasonable to believe that the unidentified sperm was deposited days prior to Ms. Hudson's murder.[2] The jury convicted Plaintiff of murder, and his conviction was upheld on all appeals.[3] Reviewing the DNA evidence twenty-two (22) years later, however, the State prosecution lost confidence in the trial testimony concerning the timing of the sperm deposit, and agreed to vacate Plaintiff's conviction pending further investigation. On October 17, 2017, the trial court dismissed the charges against Plaintiff without prejudice.

On October 10, 2018, Plaintiff filed this civil action against the City of Cleveland and several former Cleveland police officers, as well as against Challener and May individually, Balraj both

---

[2]     *See, e.g.* Plaintiff's Complaint, ¶56.
[3]     *See State v. King*, 8th Dist. No. 68726, 1996 Ohio App. LEXIS 4945, 1996 WL 661033 (Nov. 14, 1996).

individually and officially, and Cuyahoga County.[4] Plaintiff seeks to hold the Coroner Defendants financially liable for his alleged wrongful conviction – which no court has yet found – when all the Coroner Defendants did was perform forensic examinations and testing and, thereafter, to testify to the results of those actions in Plaintiff's criminal trial.

There is no plausible way to transform that conduct into constitutional violations: no matter how many times Plaintiff's Complaint accuses the Coroner Defendants of having "fabricated" or "falsified" evidence, those are conclusory *characterizations* that are not substantiated by well pled *facts*. Indeed, the Coroner's Defendants forensic reports, which Plaintiff assails repeatedly in his Complaint, but did not attach, are attached hereto to belie Plaintiff's reckless indifference to truthful pleading.[5] Because Plaintiff's Complaint fundamentally fails to plead any legally plausible claims for relief against the Coroner Defendants, the Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## ARGUMENT

Under Civ. Rule 12(b)(6), Plaintiff's Complaint is viewed in the light most favorable to him, the allegations are accepted as true, and all reasonable inferences are drawn in favor of plaintiffs.[6] Courts have recognized a crucial distinction between pleading facts and legal conclusions for ruling on 12(b)(6) motions: "a legal conclusion couched as a factual allegation" need not be accepted as true.[7] The factual allegations must "raise a right to relief above the speculative level."[8] Moreover, the complaint must state a claim that is plausible on its face – i.e., the court must be able to draw a "reasonable inference" that Defendants (May, Balraj, and Cuyahoga County) are

---

[4]    Challener passed away on September 2, 2018, and this Court dismissed him from this case on November 30, 2018.

[5]    "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

[6]    *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

[7]    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007).

[8]    *Id.*

liable for the misconduct alleged."[9] Bare legal conclusions and formulaic recitations of the elements of a cause of action will not do.[10] The plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."[11]

Here, Plaintiff's federal and state claims, couched repeatedly in terms of "fabrication" or "falsification" of evidence, are factually and legally implausible. Plaintiff's claims are in truth conclusory characterizations without facts to support them. Plaintiff's Complaint is precisely the sort of pleading condemned by the Supreme Court in *Iqbal*: "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[12]

## I.   PLAINTIFF'S FEDERAL INDIVIDUAL-CAPACITY CLAIMS AGAINST THE CORONER DEFENDANTS SHOULD BE DISMISSED.

Plaintiff asserts a myriad of federal claims against Defendants May and Balraj individually. These claims are premised on the Coroner Defendants either withholding exculpatory science or fabricating evidence that purportedly led to Plaintiff's conviction. For the reasons that follow, however, Plaintiff does not state any plausible claims for relief against these Defendants under *Iqbal*. This is starkly apparent in the case of Balraj. Initially, Plaintiff's Complaint does not plead any concrete facts suggesting direct personal involvement by Balraj. If Plaintiff seeks to impose liability on Balraj based on *respondeat superior*, that is likewise not a plausible claim as a matter of law given the clear dictates of *Monell* and its progeny.[13]

To the extent any of Plaintiff's claims are based on the testimony May (or Challener) gave at Plaintiff's criminal trial, May is entitled to absolute witness immunity. The law is clear: trial testimony – even if perjured – cannot serve as the basis of a claim of liability under Section 1983.[14] The U.S.

---

[9]   *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) (citation omitted).
[10]   *Twombly*, 550 U.S. at 555.
[11]   *Iqbal*, 556 U.S. at 678.
[12]   *Id.*
[13]   *See Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978).
[14]   *See LeFever v. Ferguson*, 956 F.Supp.2d 819, 830 (S.D.Ohio 2013), citing *Gregory v. City of Louisville*, 444 F.3d 725, 737-738 (6th Cir. 2006).

Supreme Court has held that witnesses who testify in judicial proceedings are protected by absolute immunity.[15] "Testimony at adversarial proceedings is the most historically grounded of these functions which merit absolute immunity."[16] Therefore, to the extent Plaintiff claims that May purportedly gave false testimony at Plaintiff's criminal trial that the sperm was deposited in Hudson days prior to her murder, Defendant May is entitled to absolute witness immunity.

Beyond that, Plaintiff's Complaint fails to plead any plausible claims for any pre-testimony forensic conduct by the Coroner Defendants.

A.   **Plaintiff fails to state a plausible Due Process Claim under the Fourteenth Amendment.**

Count I alleges that the Defendants violated Plaintiff's right to due process by withholding exculpatory evidence. Yet plaintiff does not plead any *facts* suggesting the Defendant May withheld exculpatory evidence. Plaintiff notes that the blood type and DNA profiles did not match Plaintiff.[17] But May disclosed and testified to that fact. Nothing was withheld. Indeed, the disclosure of that exculpatory fact belies Plaintiffs' assertion that the Coroner Defendants were in some rush to judgment to frame Plaintiff.

Plaintiff further alleges that Challener and May "fabricated false evidence" by drafting "reports that falsely stated that the forensic evidence supported that the semen secretion could not have been contemporaneous with Hudson's murder."[18] This is patently false, and this Court need not accept the Plaintiff's assertion of what the reports stated. They are attached hereto as Exhibit A and contain no such statement.[19]

---

[15]   *See Briscoe v. Lahue*, 460 U.S. 325, 326, 103 S.Ct. 1108 (1983).
[16]   *See Gregory*, 444 F.3d at 738.
[17]   *See* Complaint at ¶ 51.
[18]   *See* Complaint at ¶¶ 53-54.
[19]   The Coroner Defendants may attach these reports to their motion, since they are "referred to in the plaintiff's complaint and are central to [the] claim." *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999), quoting *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997). Accordingly, a copy of the Report of Autopsy of Crystal Hudson, Coroner's Verdict, Report of Toxicology Laboratory Findings, and Trace Evidence Report (collectively "Coroner's Reports") are attached as Exhibit A.

5

Plaintiff further alleges that Challener and May "fabricated evidence to downplay the prevalence of sperm" and "falsely generated an expert opinion relating to the prevalence of sperm to alter the timing of the deposited semen to make it appear that it was deposited days before the murder" when the science supposedly available at the time "supports that the sperm was *most likely* deposited during the rape contemporaneous with the murder."[20] Once again, however, the Coroner's findings affirmatively disclosed the evidence of sperm, regardless of how "prevalent," and the reports said nothing at all about the timing of the deposit.

That opinion evidence came in trial testimony that was fully subject to the crucible of cross-examination. Indeed, even Plaintiff can do no better here than to say the sperm was "most likely" deposited contemporaneous with the sexual encounter, which is not particularly remarkable, and the murder. In any case, Plaintiff's belated attack on the Coroner Defendants' trial opinion testimony does not establish that they "fabricated" false evidence. More importantly, predicating a constitutional tort on such opinion testimony flies directly in the face of absolute witness immunity.[21]

Plaintiff says the Coroner Defendants "created a false report to hide the presence of sperm" in the victim's rectum by "falsely suggesting that sperm was found" in the victim's vagina.[22] The reports again belie Plaintiff's assertion: spermatozoa heads were found in the victim's rectum and vagina – and the reports and testimony disclose that fact and confirm that the sperm did not match Plaintiff's DNA profile.[23] And while Plaintiff purports to quarrel with "the prevalence" and "number of sperm heads" observed,[24] his Complaint lacks any facts to support his claim or establish its ultimate materiality.

---

[20]    *See* Complaint, ¶ 56 (emphasis added).
[21]    *D'Ambrosio v. Marino*, N.D.Ohio No. 1:11 CV 933, 2012 U.S. Dist. LEXIS 141516, *9 (Oct. 1, 2012).
[22]    *See* Plaintiff's Complaint, ¶ 57.
[23]    *See* Exhibit A (Coroner's Reports).
[24]    *See* Complaint, ¶ 58.

Plaintiff goes on to allege that the Defendants "hid ... exculpatory evidence that could have been used to prove fabrication."[25] This vague allegation fails to identity how the Coroner Defendants "hid" exculpatory evidence related to the sperm samples since these samples were analyzed, disclosed when they were made part of the trace evidence report, and then testified to at trial. This is not "hiding." Given these facts, how could this implausible, conclusory claim that the Coroner Defendants *hid* such exculpatory evidence "be used to prove fabrication"? Plaintiff makes this conclusory allegation and, in the process, distorts the meaning of the term "fabrication," but then does not provide any factual allegations of how this alleged "fabrication" of evidence occurred. Therefore, his allegations are mere formulaic, threadbare claims of misconduct and should be dismissed.

### B. Plaintiff fails to state a plausible malicious prosecution claim under the Fourth Amendment.

Plaintiff's malicious prosecution should be dismissed because there are no facts to suggest that the Coroner Defendants took part in the decision to prosecute Plaintiff or that the criminal prosecution ended in his favor.[26] The elements of a malicious prosecution claim are: (1) a criminal prosecution was initiated, and the defendant made, influenced, or participated in the prosecution decision; (2) there was no probable cause to support the charges; (3) as a result of the legal proceedings, the plaintiff suffered a deprivation of liberty "apart from the initial seizure"; and (4) the criminal proceedings ended in the plaintiff's favor.[27]

Plaintiff has not plausibly alleged that Defendant May or Balraj "made, influenced, or participated in the decision to prosecute."[28] Coroners, such as Balraj and May, conduct autopsies and make reports of their findings concerning the cause of death and the manner and mode in which the

---

[25]     *See* Plaintiff's Complaint, ¶¶62-63.
[26]     In *Manuel v. City of Joliet*, 137 S.Ct. 911, 197 L.Ed.2d 312 (2017), the Court held that a claim for malicious prosecution was subject to analysis under the Fourth Amendment.
[27]     *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir.2017), citing *Sykes v. Anderson*, 625 F.3d 294, 308-309 (6th Cir. 2010).
[28]     *Sykes*, 625 F.3d at 308.

death occurred.[29] They do not decide whether a particular person committed murder and should be prosecuted for a crime. That is beyond the purview of a coroner. Moreover, Plaintiff fails to allege any facts to suggest how the Coroner Defendants influenced or participated in the decision to prosecute Plaintiff.[30] As such, Plaintiff cannot establish the first element of his malicious prosecution claim.

Plaintiff's malicious prosecution claim additionally fails because his criminal case did not terminate in his favor. "Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty."[31] A dismissal without prejudice of the underlying criminal prosecution is not a termination in the plaintiff's favor, especially where there is a possibility of indictment.[32] Here, the trial court dismissed Plaintiff's criminal case *without prejudice* on October 17, 2017.[33] Thus, there has never been a definitive finding of Plaintiff's innocence or guilt. Because Plaintiff cannot establish the elements of a malicious prosecution claim that the Coroner Defendants clearly violated, his Complaint fails to state any plausible claim for relief against Defendants.

## C. <u>Defendant Balraj and May are entitled to Qualified Immunity.</u>

Besides failing to plead any facts that could substantiate a plausible Due Process claim against May or Balraj for failing to disclose exculpatory evidence, they are nonetheless entitled to qualified immunity. Qualified immunity entitles a party to "immunity from suit rather than a mere defense to liability."[34] "Unless the plaintiff's allegations state a claim of violation of law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."[35] The Supreme

---

[29]     *See* R.C. 313.17.
[30]     *See, generally* Plaintiff's Complaint.
[31]     *Thornton v. City of Columbus*, 171 F. Supp. 3d 702, 710 (S.D. Ohio 2016), *quoting Singleton v. City of New York*, 632 F.2d 185, 193 (2d. Cir. 1980).
[32]     *See Craft v. Billingslea*, E.D.Mich. No. 17-cv-12752, 2017 U.S. Dist. LEXIS 200275, at *13 (Dec. 6, 2017), citing *Mobley v. City of Detroit*, 938 F.Supp.2d 669, 687 (E.D.Mich.2012); *Trapp v. Kimpel*, S.D.Ohio No. 3:13-cv-18, 2013 U.S. Dist. LEXIS 120490, at *22, fn. 6 (Aug. 23, 2013).
[33]     *See* Dismissal Without Prejudice, Cuyahoga County Case No. CR-94-312586-ZA)(Oct. 17, 2017).
[34]     *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806 (1985).
[35]     *Id.*

8

Court has emphasized "the importance of resolving immunity questions at the earliest possible stage in litigation."[36] To determine at the pleading stage whether a defendant is entitled to qualified immunity from suit, the court looks at whether: (1) the well-pleaded facts make out "a violation of a constitutional right" and (2) "the right at issue was clearly established *at the time of defendant's alleged misconduct*."[37] A public official asserting a qualified immunity defense may be held subject to suit for violating that right only if "[t]he contours of the right (are) sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right."[38] "The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'"[39]

In this case, at the time of Plaintiff's criminal conviction, it was not clearly established that a county coroner, medical examiner, or serologist had an obligation to disclose exculpatory evidence. While *Brady* established the duty of prosecutors to disclose exculpatory material, its holding was limited to prosecutors.[40] In *D'Ambrosio v. Marino*, this the Court concluded that "the duty of prosecutors to disclose exculpatory or impeachment evidence to criminal defendants does not extend to coroners."[41] In deciding whether a county coroner could be held liable for failing to disclose exculpatory or impeachment evidence, the court acknowledged that in *Moldowan v. City of Warren*, 578 F.3d 351, 376 (6th Cir.2009), the Sixth Circuit expanded the *Brady* obligation to police officers.[42] In addition, this Court noted that *Moldowan* extended the *Brady*-derivative obligation to include state-retained forensics

---

[36]    *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534 (1991).
[37]    *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808 (2009)(emphasis added); *see, also Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).
[38]    *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987).
[39]    *Elder v. Holloway*, 510 U.S. 510, 514 (1994), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727 (1982).
[40]    *D'Ambrosio v. Marino*, N.D.Ohio No. 1:11 CV 933, 2012 U.S. Dist. LEXIS 141516, *11-14 (Oct. 1, 2012), citing *Brady*, 373 U.S. at 87-88; *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555 (1995); *Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir.2009).
[41]    *D'Ambrosio* at *13.
[42]    *Id.*

consultant who intentionally fabricated evidence and withheld patently exculpatory evidence from the county prosecutor.[43] But this Court concluded that *Moldowan* did not expand the *Brady* obligation to county coroners and, even it did, *Moldowon* was decided twenty-one years <u>after</u> the coroner performed the autopsy. Therefore, this Court held there was no constitutional duty, let alone a firmly establish one, for a county coroner to evaluate and disclose exculpatory or impeachment evidence to criminal defendants or prosecutors.[44]

Similar to the plaintiff in *D'Ambrosio*, Plaintiff here attempts to extend a *Brady* obligation to May and Balraj for allegedly concealing and fabricating evidence. The State convicted Plaintiff in 1995. Even assuming arguendo that the Coroner Defendants concealed evidence from Plaintiff, which they did not, the Sixth Circuit decided *Moldowan* in 2009. This was approximately fourteen years after Plaintiff's conviction. Since this Court has already held that county corners were not liable under *Brady* prior to the Sixth Circuit's 2009 *Moldowon* decision, Plaintiff cannot establish that May or Balraj had a clearly established constitutional duty to defeat their right to qualified immunity. Accordingly, Plaintiff's due process claims should be dismissed because May and Balraj are entitled to qualified immunity.

In addition, Balraj and May are entitled to qualified immunity as to Plaintiff's malicious prosecution claim. There does not appear to be any cases that squarely hold a county coroner liable for malicious prosecution for simply preparing an autopsy report that might have caused the filing of criminal charges. Therefore, Balraj and May are entitled to qualified immunity.

### D. <u>Plaintiff fails to plead a plausible claim for civil conspiracy.</u>

A civil conspiracy claim under § 1983 ... lies when there is 'an agreement between two or more persons to injure another by unlawful action.'"[45] A plaintiff must allege "'that (1) a single plan existed,

---

[43]      *Id.* at *13-14, citing *Gregory*, 444 F.3d at 730.
[44]      *Id.* at *14; *see, also LeFever v. Ferguson*, 956 F.Supp.2d 819 (S.D.Ohio 2013).
[45]      *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007).

(2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury."[46] Moreover, it is well-settled that conspiracy claims must be pled with some degree of specificity."[47] "[V]ague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."[48]

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations describe a number of discrete facts involving a myriad of individuals from the County Coroner's office and the Cleveland Police Department. Of course, Plaintiff does not identify who amongst the Defendants were involved in the alleged conspiratorial plan. Moreover, Plaintiff has provided no allegations establishing a link between the unidentified conspirators or any agreement between them. He relies on a highly attenuated inference from the fact that the Coroner Defendants provided testimony that Hudson's murder occurred days after she was allegedly raped by another man. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made."[49] Accordingly, Plaintiff's speculative assertion that a conspiracy existed to deprive Plaintiff of his constitutional rights is insufficient. Therefore, his federal civil conspiracy claim should be dismissed.

### E.   Plaintiff fails to state a plausible claim for failing to intervene.

To plausibly state a failure-to-intervene claim, a plaintiff must show that the defendants "(1) observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) had both the opportunity and the means to prevent the harm from occurring."[50] Defendants cannot be

---

[46]   *Id.*

[47]   *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir.2014), citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

[48]   *Id.*

[49]   *Twombly*, 550 U.S. at 556.

[50]   *Virgil v. City of Newport*, E.D.Ky. No. 16-224-DLB-CJS, 2018 U.S. Dist. LEXIS 3708, at *32 (Jan. 9, 2018), citing *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014), quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

held liable, however, unless there was "a realistic opportunity to intervene and prevent harm."[51] Setting aside that Plaintiff is unable to establish that any of the Coroner Defendants caused him to suffer a constitutional harm, his failure to intervene claim is based on vague and conclusory assertions.

The implausibility of this claim begins with Plaintiff's failure to identify who amongst the Coroner Defendants failed to intervene, if anyone at all. It continues with Plaintiff's failure to allege any plausible facts showing how these unidentified, prospective intervenors knew of the alleged constitutional harm and how they could have prevented it. Such vagaries make it impossible for Defendants and the Court to know whether the intervenors even had a "realistic opportunity" to intercede to stop the alleged constitutional harm. Plaintiff merely recites the elements of a failure to intervene claim under §1983, and provides scant factual background to convey a plausible failure to intervene claim under *Iqbal*. Accordingly, Plaintiff's failure to intervene claim should be dismissed.

**F.**   **Plaintiff fails to state a plausible claim for supervisory liability.**

An individual-capacity claim against a supervisor for failure to train or supervise an offending subordinate is actionable if that supervisor: (1) "encouraged the specific incident of misconduct or in some other way directly participated in it" or (2) "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct."[52] In *Iqbal*, the Supreme Court stated that in suits under § 1983, "the term 'supervisory liability' is a misnomer" because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[53] In other words, a supervisory official cannot be liable "simply because he or she was charged with overseeing a subordinate who

---

[51]   *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013), citing *1 v. Rutherford Cty., Tenn.*, 222 F. App'x 498, 507 (6th Cir. 2007).

[52]   *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982); *see Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016).

[53]   *Iqbal*, 556 U.S. at 677. *Colson v. City of Alcoa*, E.D.Tenn. No. 3:16-CV-377, 2017 U.S. Dist. LEXIS 66339, at *15-16 (May 2, 2017).

violated the constitutional rights of another."[54] Therefore, a supervisor's mere failure to act is insufficient to establish supervisory liability. Instead "supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor."[55]

Here, Plaintiff alleges that Balraj[56] generally turned "a blind eye" to the misconduct of her subordinates (Challener and May) while they purportedly falsified or withheld exculpatory evidence.[57] This alleged failure to act or turn a blind eye is insufficient to support a supervisory liability claim under §1983. To the extent Plaintiff is claiming that Balraj signed-off on May and Challener's reports that contained the alleged false opinions concerning Ms. Hudson's death and when the semen was deposited, these opinions were not in the reports.

Next, Plaintiff baldly claims that Balraj was "aware of and facilitated, condoned, and oversaw the withholding of exculpatory evidence."[58] But these threadbare and conclusory allegations are insufficient to support a supervisory liability claim under *Iqbal.* There are no factual allegations explaining how Balraj encouraged, participated in, implicitly authorized, or knowingly acquiesced to May or Challener's alleged unconstitutional conduct. Plaintiff's supervisor liability claim merely restates the elements the claim, but fails to provide additional facts to advance the plausibility of his accusations. Therefore, Plaintiff's supervisor liability claim should be dismissed.

---

[54]     *Peatross,* 818 F.3d at 241.

[55]     *Id.* (quotation omitted); *see Salehpour v. Univ. of Tenn.,* 159 F.3d 199, 206 (6th Cir. 1998) ("[S]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Instead the liability must be based upon active unconstitutional behavior." (citation omitted)).

[56]     *N.B.* Plaintiff does not specifically mention Balraj, but she is the only supervisor amongst the Coroner Defendants still in this case.

[57]     *See* Complaint, ¶125.

[58]     *See Id.,* ¶127.

## II.    PLAINTIFF'S COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM FOR MONELL LIABILITY.

Plaintiff's Complaint purports to assert claims against Cuyahoga County and against Balraj in her official capacity.[59] To recover under 42 U.S.C. § 1983, Plaintiff has the burden of showing that the County maintains unconstitutional or illegal policies.[60] In *Monell*, the Supreme Court held that municipalities cannot be liable under §1983 on a *respondeat superior* theory, but can be liable if the municipality maintains unconstitutional or illegal policies.[61] "It is only when the execution of the government's policy or custom ... inflicts the injury that the municipality may be held liable under Section 1983."[62]

"A municipality may be liable under Section 1983 for actions of its authorized policymakers 'where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'"[63] A policymaker is the final authority if his or her "decisions are final and unreviewable and are not constrained by the official policies of superior officials."[64] "Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker . . . ."[65] A final policymaker is not simply a decision maker, but is charged with the duty to "'formulate[] plans for the implementation of broad goals.'"[66]

---

[59]     An "official capacity" suit is generally just another way of pleading an action against the entity of which the officer is an agent. *See Kentucky v. Graham,* 473 U.S. 159, 165-166 (1985).

[60]     *See Monell v. Dept. of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018 (1978).

[61]     *Id.*

[62]     *See Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994), quoting *City of Canton v. Harris,* 489 U.S. 378 (1989).

[63]     *Adair v. Charter County of Wayne,* 452 F.3d 482, 493 (6th Cir. 2006), quoting *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S. Ct. 1292 (1986).

[64]     *Waters v. City of Morristown,* 242 F.3d 353, 362 (6th Cir. 2001).

[65]     *Feliciano v. City of Cleveland,* 988 F.2d 649, 655 (6th Cir. 1993).

[66]     *Miller v. Calhoun County,* 408 F.3d 803, 814 (6th Cir. 2005), quoting *Hager v. Pike County Bd. of Educ.,* 286 F.3d 366, 376 (6th Cir. 2002).

14

Plaintiff generally claims that all of the Coroner Defendants were final policymakers, but provides no other factual basis for supporting this assertion.[67] This vague assertion barely even recites the requisite elements for an official policy claim, and is the exact sort of allegation the U.S. Supreme Court rejected in *Iqbal* in dismissing the plaintiff's *Monell* claims. In *Iqbal*, the Court found that plaintiff's allegations that "Ashcroft was [a] policy's principal architect; and that Mueller was 'instrumental' in [the policy's] adoption and execution – are conclusory and not entitled to be assumed true."[68] Plaintiff's allegations are no more detailed or supported by factual allegations than the bald allegations found deficient in *Iqbal*.

In addition, Plaintiff's does not plead a plausible claim that Defendants' actions amounted to a constitutionally violative policy or custom. "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice."[69] For a custom to give rise to *Monell* liability, the custom "must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'"[70] Such a custom "must include '[d]eeply embedded traditional ways of carrying out state policy.'"[71]

Once again, Plaintiff does not plead sufficient facts demonstrating that the County Coroner's Office had an established custom or policy of withholding or fabricating evidence. Although Plaintiff cites to several cases suggesting that the Defendants have such policies or practices of engaging in wrongful arrests and prosecutions, these cases do not appear to have involved the County Coroner's Office.[72] In fact, the first criminal case cited by Plaintiff (Leonard O'Neil) is from Portage County.[73]

---

[67]    *See* Complaint, ¶¶ 95; 110.
[68]    *Iqbal*, 556 U.S. at 664.
[69]    *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir.2004).
[70]    *Miller*, 408 F.3d at 814-815; citing *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir.1996), quoting *Monell*, 436 U.S. at 691, 98 S.Ct. 2018.
[71]    *Miller*, 408 F.3d at 814-815, quoting *Nashville, Chattanooga & St. Louis Ry. Co. v. Browning*, 310 U.S. 362, 369, 60 S.Ct. 968 (1940).
[72]    *See* Plaintiff's Complaint, ¶¶ 99-100.
[73]    *O'Neil v. State*, 13 Ohio App.3d 320, 320, 469 N.E.2d 1010 (10th Dist.1984).

And the only case Plaintiff cites involving fabrication of "forensic evidence" involved a Mr. Anthony Michael Green.[74] It appears Mr. Green was exonerated after a serologist from the Cleveland Police Department, not the County Coroner's Office, provided false testimony linking Mr. Green to a rape.[75]

Accordingly, Plaintiff has alleged speculative and conclusory allegations that the County Coroner's office had some custom, policy, or practice of withholding exculpatory or fabricating evidence. But the allegations in his complaint fail to reinforce his claim that these alleged policies, customs, or practices had the force or effect of law. Therefore, he has failed to assert a plausible *Monell* claim against the County or the County Coroner's Office.

## III.   PLAINTIFF'S STATE LAW CLAIMS LACK PLAUSIBILITY.

### A.   <u>Plaintiff's criminal prosecution did not terminate in his favor; therefore, his state law malicious prosecution claim must fail.</u>

To sustain an action for malicious prosecution under Ohio law, Plaintiff must plead and prove: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused.[76] "A proceeding is 'terminated in favor of the accused' only when its final disposition indicates that the accused is innocent."[77] Ohio law requires that a plaintiff in a malicious prosecution action must not only demonstrate that "he was absolved of any wrongdoing" but that the "charges were actually adjudicated on the merits in his favor."[78] For example, in *Mann v. Genoa Twp.*, 5th Dist. Delaware Case No. 01CAE03011, 2002-Ohio-727, the Court determined that a dismissal without prejudice of criminal case was not a termination of the prosecution in favor of the accused; therefore, the plaintiff's malicious prosecution claim was not ripe for review.

---

[74]    *See* Plaintiff's Complaint, ¶100.
[75]    *O'Neil*, 13 Ohio App.3d 320.
[76]    *Ash v. Ash*, 72 Ohio St. 3d 520, 522, 651 N.E.2d 945 (1995), citing *Trussell v. General Motors Corp.*, 53 Ohio St. 3d 142, 559 N.E.2d 732 (1990).
[77]    *See Collins v. Clancy*, S.D.Ohio No. 1:12-cv-152-HJW, 2014 U.S. Dist. LEXIS 56816, *36 (Apr. 23, 2014), citing *Ash*, 72 Ohio St.3d at 522.
[78]    *Palshok v. Jarrett*, 32 Fed. Appx. 732, 736 (6th Cir.2002).

The trial court dismissed Plaintiff's criminal case *without prejudice* on October 17, 2017.[79] Therefore, Plaintiff cannot establish his criminal prosecution terminated in his favor. Accordingly, Plaintiff's state law malicious prosecution claim should be dismissed.

**B.    Plaintiff's Intentional Infliction of Emotional Distress is baseless.**

To establish a claim of intentional infliction of emotional distress (I.I.E.D), plaintiff must show that: (1) defendant either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress; (2) defendant's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's actions were the proximate cause of plaintiff's psychic injury; and (4) the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could be expected to endure it.[80]

As demonstrated throughout this brief, Plaintiff's allegations that the Coroner Defendants fabricated and withheld evidence or evidence is simply not supported by sufficient factual allegations under *Iqbal*. The County Reports simply do not support Plaintiff's claim that either May, Challener, or Balraj provided opinions beyond the cause, means, and mode of Hudson's murder. They did not opine in the report that Plaintiff murdered Hudson, nor is there any conclusion reached in the reports that Hudson's death occurred days after she was allegedly raped by another man. At best, May gave an opinion at Plaintiff's criminal trial that it was "likely" Ms. Hudson's murder occurred days after the semen found in her rectum and vagina was deposited. Even assuming May's conclusions to be false, Plaintiff's had an opportunity to cross-examine May and contradict her opinions at trial. Consequently, giving an opinion that later (might) be proven inaccurate does not rise to the level of being "extreme

---

[79]    *See* Dismissal Without Prejudice, Cuyahoga County Case No. CR-94-312586-ZA (Oct. 17, 2017).
[80]    *Ekstrom v. Cuyahoga Cty. Community College*, 150 Ohio App.3d 169, 2002-Ohio-6228, 779 N.E.2d 1067, ¶ 56 (8th Dist. 2002) (citations omitted).

and outrageous" and utterly intolerable in civilized society. Accordingly, Plaintiff's I.I.E.D. claim is implausible and should be dismissed.

## C. Plaintiff's civil conspiracy claim suffers from the same pleading deficiencies as his federal claim.

Civil conspiracy in Ohio is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages."[81] A plaintiff must establish the following elements: (1) a malicious combination; (2) two or more persons; (3) injury to person or property; and (4) existence of an unlawful act independent from the actual conspiracy.[82] Although the elements of a federal and state malicious prosecution differ slightly, they both require evidence of some conspiratorial plan. Defendants incorporate their arguments in response to Plaintiff's federal malicious prosecution (Section I.D above). Plaintiff simply rests on speculative and conclusory allegations that some conspiracy exists, but fails to provide factual allegations to support this conjecture. Notwithstanding, Plaintiff cannot prove any of his underlying torts (malicious prosecution or I.I.E.D.). As such, his civil conspiracy claim is meritless and should be dismissed.

## D. The County is entitled to immunity under R.C. Chapter 2744.

The County is entitled to immunity under R.C. § 2744.02(A)(1). To abrogate this general grant of immunity, Plaintiff must point to one of the exceptions to immunity under R.C. 2744.02(B)(1)-(5). Claims for intentional tortious conduct are not included within any of the immunity exceptions.[83] The tort of malicious prosecution is an intentional tort, given that malice is one of the elements of the tort: "(1) malice in instituting or continuing the prosecution...."[84] Similarly, I.I.E.D. is

---

[81]   *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419, 650 N.E.2d 863 (1995).
[82]   *Scanlon v. Gordon F. Stofer & Bro. Co.*, 8th Dist. Cuyahoga Nos. 55467, 55472, 1989 Ohio App. LEXIS 2528, at *41-42 (June 22, 1989).
[83]   *See Wilson vs. Stark County Department of Human Services*, 70 Ohio St. 3d 450, 452, 639 N.E.2d 105 (1994).
[84]   *Trussell*, 53 Ohio St.3d 142, 559 N.E.2d 732, syllabus.

18

an intentional tort.[85] Because there are no exceptions to statutory immunity for the intentional torts of I.I.E.D. or malicious prosecution, the County is entitled to statutory immunity. [86]

In addition, civil conspiracy and *respondeat superior* are derivative claims and require the existence of an underlying tort for them to be actionable.[87] "A political subdivision may not be held liable under a theory of *respondeat superior* unless one of the exceptions to sovereign immunity listed in R.C. 2744.02(B) applies."[88] The same goes for a civil conspiracy claim.[89] As such, a plaintiff must demonstrate that one of the five exceptions under R.C. 2744.02(B) applies before his or her respondeat superior or civil conspiracy claims are actionable.

Here, Plaintiff asserts only two tort claims against the County: malicious prosecution and intentional infliction of emotional distress.[90] These claims are intentional torts for which there is no exception to immunity. Given the derivative nature of a civil conspiracy and *respondeat superior* claim, Plaintiff must establish an exception to immunity for the alleged torts they claim the County conspired to commit or for which *respondeat superior* liability applies. Since there is no exception to the County's general grant of immunity for the alleged intentional torts, Plaintiff's civil conspiracy and *respondeat superior* claims should be dismissed.

E.    **Plaintiff's indemnification claim is not a separate cause of action.**

Plaintiff appears to allege a stand-alone claim for indemnification in his Complaint. This is not a separate cause of action, but merely a remedy available to the County to employees. Only the County Defendants have the right to seek indemnification under R.C. 2744.07(A)(2); therefore, Plaintiff has

---

[85]     *Wilson,* 70 Ohio St. 3d at 452, 639 N.E.2d 105.
[86]     *Wilson,* 70 Ohio St. 3d at 452, 639 N.E.2d 105l; *Price v. Austintown Local School Dist. Bd. of Edn.,* 178 Ohio App.3d 256, 2008-Ohio-4514, 897 N.E.2d 700, ¶ 22 (7th Dist.)
[87]     *See Ghaster v. City of Rocky River,* 8th Dist. Cuyahoga No. 99779, 2013-Ohio-5587, ¶ 9 ("Civil conspiracy is a derivative claim. In order for a claim for civil conspiracy to succeed[,] a party must demonstrate the existence of an underlying unlawful act."); *Natl. Union Fire Ins. Co. v. Wuerth,* 122 Ohio St.3d 594, 2009-Ohio-3601, 913 N.E.2d 939, ¶ 20.
[88]     *McKee v. McCann,* 2017-Ohio-7181, 95 N.E.3d 1079, ¶ 48 (8th Dist.), *Reno v. Centerville,* 2d Dist. Montgomery No. 20078, 2004-Ohio-781, ¶ 53 (citations omitted).
[89]     *See Ghaster* at ¶ 9.
[90]     *See* Plaintiff's Complaint, Count VI (Malicious Prosecution) and Count VII (IIED).

no right to bring this claim. Since none of Plaintiff's claims are viable, the County has no duty to indemnify and this claim should be dismissed.

Respectfully submitted,

MICHAEL C. O'MALLEY, PROSECUTING
ATTORNEY OF CUYAHOGA COUNTY, OHIO

By:     /s/ Brendan D. Healy

BRENDAN D. HEALY (0081225)
Assistant Prosecuting Attorney
The Justice Center, Courts Tower
1200 Ontario Street, 8th Floor
Cleveland, Ohio 44113
Tel: (216) 698-6447
Fax: (216) 443-7602
Email: bhealy@prosecutor.cuyahogacounty.us
Attorney for Defendants Cuyahoga County;
Kay May, and Elizabeth K. Balraj, M.D.

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2018, a copy of the foregoing was filed electronically using the Court's CM/ECF system. Notice of filing will be sent to all parties by operation of the Court's electronic filing system and/or regular U.S. Mail. Parties may access this document through the Court's electronic filing system.

/s/ Brendan D. Healy

BRENDAN D. HEALY (0081225)