**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

EVIN KING,                                             )
                                                       )
        Plaintiff,                                     )
                                                       )        Case No. 18-cv-02353
        v.                                             )        Honorable Dan A. Polster
                                                       )
CLEVELAND POLICE OFFICERS                              )
ROBERT MATUSZNY, GREGORY KUNZ,                         )
MICHAEL O'MALLEY, THOMAS                               )
MILLER, TIMOTHY ZBIKOWSKI,                             )
DENNIS GUNSCH, CITY OF                                 )
CLEVELAND, a municipal corporation,                    )
ROBERT CHALLENER, KAY MAY, and                         )
ELIZABETH K. BALRAJ, Cuyahoga County                   )
Coroner sued in her individual and official            )
capacities, and CUYAHOGA COUNTY,                       )
                                                       )
        Defendants.                                    )        **JURY TRIAL DEMANDED**
                                                       )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS CUYAHOGA COUNTY, ROBERT CHALLENER, KAY MAY,
ELIZABETH K. BALRAJ'S MOTIONS FOR JUDGMENT ON THE PLEADINGS
(DCKT. 61 AND 64)**

Arthur Loevy
Jon Loevy
Scott Rauscher
Danielle Hamilton
Mark Loevy-Reyes
LOEVY & LOEVY
311 North Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
hamilton@loevy.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. iv

INTRODUCTION ...............................................................................................................1

FACTS .................................................................................................................................2

LEGAL STANDARD...........................................................................................................4

ARGUMENT .......................................................................................................................5

I.    The Court Should Deny County Defendants' Motions
      Because They Are Premature..................................................................................5

      A.  County Defendants Filed Their Rule 12(c) Motions Before The Pleadings Were
          Closed ..........................................................................................................5

      B.  County Defendants Are Estopped from Filing Post-Answer Rule 12(b)(6)
          Motions .........................................................................................................7

II.   Plaintiff's Federal Claims Are Viable ...................................................................8

      A.  Plaintiff Sufficiently Alleges A Due Process Claim Against County Defendants
          for Fabricating Evidence and/or Withholding Exculpatory Evidence...................8

              1. Plaintiff Adequately Pleaded a Fabrication of Evidence Claim ...............9

              2. Plaintiff Adequately Pleaded a *Brady* Claim ...........................................12

      B.  Plaintiff's Amended Complaint Sufficiently Alleges a Malicious Prosecution
          and/or Deprivation of Liberty Without Probable Cause Claim ............................14

      C.  Plaintiff's Amended Complaint Sufficiently Alleges Claims of Conspiracy
          Against County Defendants .................................................................................18

      D.  Plaintiff's Failure to Intervene Claim is Viable.................................................19

      E.  Plaintiff's Claim Against Defendants Challener and Balraj for Failing to
          Supervise is Viable .............................................................................................20

II.   Forensic Defendants Are Not Entitled to Qualified Immunity...................................21

      A.  A Dismissal Based on Qualified Immunity Is Rarely Appropriate at the 12(b)(6)
          Stage and Is Certainly Not Appropriate In This Case...........................................22

B.  The Police Defendants' Misconduct in 1995
Violated Clearly Established Rights ........................................................24

III.   Plaintiff's Claims Against Defendant Estate of Challenger
Should Not Be Dismissed .............................................................................28

IV.   Plaintiff's Municipal Policy and Practice Claims are Viable ....................................30

V.   Plaintiff's State-Law Claims Are Viable ...................................................................32

A.  Plaintiff's Ohio Malicious Prosecution Claims is Viable .....................................32

B.  Plaintiff's Ohio Intentional Infliction of Emotional Distress ("IIED") Claim is
Viable ...................................................................................................................33

C.  Plaintiff's Ohio Conspiracy Claim is Viable .........................................................34

D.  Cuyahoga County is Not Immune from All of Plaintiff's State Law Claim .........35

CONCLUSION .........................................................................................................................38

## <u>TABLE OF AUTHORITIES</u>

*A.M.S. v. Steele*, 2012 WL 2130971 (S.D. Ohio June 8, 2012) ................................... 31

*Amini v. Oberlin College*, 259 F.3d 493 (6th Cir. 2001) ...........................................11

*Anderson v. Creighton*, 483 U.S. 635 (1987) ..................................................27, 28

*Anderson v. Knox Cty*, 2018 WL 7500205 (E.D. Ky. Oct. 3, 2018) .............................19

*Ashcroft v. al–Kidd*, 563 U.S. 731 (2011)...............................................................28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).............................................................4, 31

*Ayers v. City of Cleveland*, 2013 WL 775359 (N.D. Ohio Feb. 25, 2013) ............13, 36

*Ayers v. City of Cleveland*, 2014 WL 2042254 (N.D. Ohio July 11, 2014) ................36

*Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842 (4th Cir. 1964) ...........................25

*Mills v. Barnard*, 869 F.3d at 480 (W.D. Ky. Mar. 5, 2019)...................................8, 16

*Barnes v. Wright*, 449 F.3d 709 (6th Cir. 2006) ....................................................14

*Bass v. Robinson*, 167 F.3d 1041 (6th Cir. 1999) ..................................................21

*Brady v. Maryland*, 373 U.S. 83 (1963) ..........................................................13, 25

*Brenay v. Schwartow*, 709 F. App'x 33 (6th Cir. 2017)............................................10

*Bright v. Gallia Cty., Ohio*, 753 F.3d 639 (6th Cir. 2014) .........................................30

*Brown v. Mississippi*, 297 U.S. 278 (1936) ..........................................................26

*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)..................................................10

*Bumpers v. Austal, USA, LLC.*, 2014 WL 12781154 (S.D. Ala. Nov. 18, 2014) ..........29

*Carrillo v. Cnty. of Los Angeles*, 798 F.3d 1210 (9th Cir. 2015) ...............................26

*Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284 (1st Cir. 1995).....................................................................................................10

*City of Memphis v. Roberts*, 528 S.W.2d 201 (Tenn. 1975) ...............................36, 37

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) ...................................18

*Courtright v. City of Battle Creek*, 839 F.3d 513 (6th Cir. 2016) ...............................................23

*Crabbs v. Scott* 880 F.3d 292 (6th Cir. 2018)...............................................................................30

*Crawford-El v. Britton*, 523 U.S. 574 (1998) .................................................................................23

*D'Ambrosio v. Marino*, 747 F.3d 378 (6th Cir. 2014)...................................................................13

*Dawson v. Monroe Cnty.*, 2014 WL 700400 (E.D. Tenn. Feb. 24, 2014) ....................................16

*Dixon v. Holden*, 923 S.W.2d 370 (Mo. App. Ct. 1996) ..............................................................37

*Doe v. United States*, 419 F.3d 1058 (9th Cir. 2005)......................................................................6

*Dowling v. City of Barberton*, 2008 WL 4415931 (N.D. Ohio Sept. 24, 2008)...........................31

*Dunn-Mason v. JP Morgan Chase Bank Nat. Ass'n,* 2013 WL 4084676 (E.D. Mich. Aug. 13, 2013) ...............................................................................................................................................5

*E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154 (2d Cir. 2001) ........................29

*Echavarria v. Roach et al.*, No. 16-cv-11118 (D. Mass.) ..............................................................29

*Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503 (Ohio Ct. App. 1997)......................34

*Evans v. Kropp*, 254 F. Supp. 218 (E.D. Mich. 1966)...................................................................26

*Ferron v. Echostar Satellite, LLC*, 2007 WL 9728914 (S.D. Ohio Mar. 23, 2007) ....................11

*First Idaho Corp. v. Davis,* 867 F.2d 1241 (9th Cir. 1989)...........................................................29

*Fritz v. Charter Twp. of Comstock*, 592 F.3d 718 (6th Cir. 2010) .................................................4

*Geter v. Fortenberry*, 849 F.2d 1550 (5th Cir. 1988) ...................................................................26

*Giglio v. United States*, 405 U.S. 150 (1972) ...............................................................................26

*Gokor v. Schlievert*, 335 F. Supp. 3d 972 (N.D. Ohio 2018)........................................................17

*Gomez v. Toledo*, 446 U.S. 635 (1980)..........................................................................................22

*Goodwin v. City of Painesville*, 781 F.3d 314 (6th Cir. 2015) .....................................................19

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) ..........................................................9

*Grove Press, Inc. v. Angleton*, 649 F.2d 121 (2d. Cir. 1981) ........................................................19

*Habeeba's Dance of the Arts., Ltd. v. Knoblauch*,
2006 WL 968642 (S.D. Ohio Apr. 10, 2006) ...............................................................6

*Hansen v. Westerville City Sch. Dist. Bd. of Educ.*, 1994 WL 622153 (6th Cir. 1994).................27

*Hays v. Jefferson County, Ky.*, 668 F.2d 869 (6th Cir. 1982) ......................................................27

*Heck v. Humphrey*, 512 U.S. 477 (1994) .....................................................................................16

*Hilliard v. Williams*, 516 F.2d 1344 (6th Cir. 1975).....................................................................25

*Hope v. Pelzer*, 536 U.S. 730 (2002) ...........................................................................................28

*Horen v. Board of Educ. of Toledo City Sch. Dist.*, 594 F. Supp.2d 833 (N.D. Ohio 2009)...........6

*Hoskins v. Knox Cty., Kentucky*, 2018 WL 1352163 (E.D. Ky. Mar. 15, 2018) ..........................7

*In re Fair Finance Co.*, 834 F.3d 651 (6th Cir. 2016) ................................................................11

*Jaco v. Bloechle*, 739 F.2d 239 (6th Cir. 1984) ..........................................................................29

*Jackson v. Brown*, 513 F.3d 1057 (9th Cir. 2008) ......................................................................25

*Jackson v. City of Cleveland*, 920 F.3d 340 (6th Cir. 2019)...............................................29, 30

*Jackson v. Marion Cty.*, 66 F.3d 151 (7th Cir. 1995) .................................................................32

*Jordan v. Blount Cty.*, 885 F.3d 413, (6th Cir. 2018) .................................................................17

*Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir. 2001) ...........................................................11

*Kowall v. GMAC Mortg., LLC*, 2012 WL 884851 (E.D. Mich. Mar. 15, 2012) ..........................5

*Kyles v. Whitley*, 514 U.S. 419 (1995)........................................................................................25

*Kynaston v. United States,* 717 F.2d 506 (10th Cir. 1983) .........................................................29

*Leatherman v. Tarrant Cty. Narcotics Intelligence
& Coordination Unit*, 507 U.S. 163 (1993)................................................................31

*LeFever v. Ferguson*, 645 F. App'x. 438 (6th Cir. 2016)............................................................24

*Linetsky v. City of Solon*, 2016 WL 6893276 (N.D. Ohio Nov. 23, 2016)...................................16

*Local 109 Bd. of Tr. of the Operative Plasterers and Cement Masons Pension Fund v. All Am. Acoustic and Drywall*, 2016 WL 5232828 (N.D. Ohio Sept. 22, 2016)...........................................8

*Longstreth v. Franklin County Children Servs.*, 14 F.3d 601 (6th Cir. 1993).............................35

*Malley v. Briggs*, 475 U.S. 335 (1986) ................................................................................15

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ....................................................................14

*McPherson v. Kelsey*, 125 F.3d 989 (6th Cir. 1997)...............................................................10

*McMillian v. Johnson*, 88 F.3d 1554 (11th Cir. 1996) ...........................................................26

*McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460 (6th Cir. 2006) ................................................20

*Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898 (6th Cir. 2004) ....................................................................................................18

*Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017)...........................................................8, 16

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009).....................................................25

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) .................................................30

*Mooney v. Holohan*, 294 U.S. 103 (1935) ........................................................................24, 26

*Moran v. Peralta Comty. Coll. Dist.*, 825 F. Supp. 891 (N.D. Cal. 1993) ....................................6

*Napue v. Illinois*, 360 U.S. 264 (1959) ..........................................................................25, 26

*Nat'l Bankers Trust Corp. v. Peak Logistics LLC*, 2013 WL 3070843 (W.D. Tenn. June 17, 2013) ...............................................................................................................................8

*Nationwide Children's Hosp., Inc. v. D.W. Dickey & Sons, Inc. Emp. Health & Welfare Plan*, 2009 WL 5247486 (S.D. Ohio Dec. 31, 2009) ........................................................................6

*Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001)...............................................................26

*Noel v. Hall*, 2005 WL 2007876 (D. Or. Aug. 16, 2005) .........................................................7

*Nuchols v. Berrong*, 141 F. App'x 451 (6th Cir. 2005) .............................................................4

*Paolisso v. Edison Local Bd. of Educ.*, 1992 WL 19829 (Ohio App. Ct. Feb. 5, 1992) ..............37

*Peatross v. City of Memphis*, 818 F.3d 233 (6th Cir. 2016) .......................................................21

*Phillips v. Roane County, Tenn.*, 534 F.3d 531 (6th Cir. 2008) .................................................21

*Proffitt v. Ridgway*, 279 F.3d 503 (7th Cir. 2002) ..........................................................................19

*Progressive Casualty Ins. Co. v. Estate of Crone*, 894 F. Supp. 383 (D. Kansas 1995) ...............6

*Pyle v. Kansas*, 317 U.S. 213 (1942) ...............................................................................................26

*Quinones v. Szorc*, 771 F.2d 289 (7th Cir. 1985) ...........................................................................18

*Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005) ...............................................32

*Rivera v. Lake County*, 974 F. Supp. 2d 1179 (N.D. Ill. 2013) .....................................................29

*Rolen v. City of Cleveland*, 2013 WL 12145960 (N.D. Ohio Aug. 7, 2013)..................................31

*Shehee v. Luttrell*, 199 F.3d 295 (6th Cir. 1999) ...........................................................................20

*Signature Combs, Inc. v. United States,* 253 F. Supp. 2d 1028 (W.D. Tenn. 2003).......................6

*Smith v. Ross*, 482 F.2d 33 (6th Cir. 1973).....................................................................................27

*Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999).................................................................9, 10

*Stack v. Karnes*, 750 F.Supp.2d 892 (S.D. Ohio 2010) ..................................................................31

*State of Ohio v. King*, 2017 WL 242059 (Ohio Ct. of App. Jan. 19, 2017)....................................17

*Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*,
821 F.3d 780 (6th Cir. 2016) ............................................................................................................4

*Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997) .........................................................9, 10

*Stengel v. Columbus*, 600 N.E.2d 248 (Ohio Ct. App. 1991) .........................................................38

*Stewart v. Special Administrator of the Estate of Mesrobian*, 559 Fed.
App'x 543, 548 (7th Cir. 2014) .......................................................................................................29

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) ..........................................................................14

*Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099 (6th Cir. 2008) ...............................33

*Tinney v. Richland Cty.*, 2015 WL 542415 (N.D. Ohio Feb. 10, 2015) .........................................19

*Tolan v. Cotton*, 572 U.S. 650 (2014)..............................................................................................28

*Trussell v. General Motor Corp.*, 559 N.E.2d 732 (Ohio 1990) ...................................................32

*Turner v. Scott,* 119 F.3d 425 (6th Cir. 1997)...................................................................................19

*U.S. v. Bagley*, 473 U.S. 667 (1985) ............................................................................................14, 25

*United States v. Frost*, 914 F.2d 756 (6th Cir. 1990)........................................................................19

*United States v. Lanier*, 520 U.S. 259 (1997)............................................................................26, 28

*Vaughan v. City of Shaker Heights*, 2011 WL 5966732 (N.D. Ohio Nov. 28, 2011*)* ..................35

*Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992)...............................................................25

*Wallace v. Kato*, 549 U.S. 384 (2007) ..............................................................................................16

*Wells Fargo Fin. Leasing, Inc. v. Griffin*, 97. F. Supp. 2d 700 (E.D. Ky. 2013) ............................5

*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015)..........................................................................22

*Wesley v. Rigney*, 913 F. Supp. 2d 313 (E.D. Ky. 2012) ..................................................................7

*Wohl v. Cleveland Bd. of Educ.*, 741 F. Supp. 688 (N.D. Ohio June 15, 1990) ...........................35

*Womack v. Conley*, 595 F. App'x 489, 2014 WL 6997493 (6th Cir. Dec. 11, 2014)....................18

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) .........................................................................................28

## INTRODUCTION

Plaintiff Evin King spent twenty-three years in prison for a rape and murder he did not commit. Mr. King's Amended Complaint explains in great detail that his wrongful conviction was no accident. Rather, as the Amended Complaint explains, Cleveland Police Defendant Officers Dennis Gunsch, Gregory Kunz, Robert Matuszny, Thomas Miller, Michael O'Malley, and Timothy Zbikowski ("Police Defendants") fabricated and suppressed evidence including witness statements to falsely claim that Mr. King had the opportunity and intent to commit the crimes, and Cuyahoga County Coroner's Office Defendants Robert Challener, Kay May, and Elizabeth Balraj ("Forensic Defendants") fabricated forensic evidence to falsely claim that the rape of Ms. Hudson did not happen simultaneously with her murder, which was necessary to explain away the powerful exculpatory evidence that the DNA found in Ms. Hudson's body did not match Mr. King.

Defendant Cuyahoga County and the Forensic Defendants ("County Defendants") filed motions for judgment on the pleadings that the Court should deny because they are procedurally improper, ask the Court to consider evidence outside the Complaint, and presume that Defendants' version of the facts is accurate, none of which the Court may do at the pleadings stage.

The standard for County Defendants' motion on the pleadings is the same as the standard for deciding a motion to dismiss. That means the Court must only evaluate whether Plaintiff has pled sufficient facts that would allow it to draw the reasonable inference that County Defendants are liable for the alleged misconduct. Plaintiff has met his burden; County Defendants' motions should be denied.

**FACTS**

As recounted in rich factual detail in the Amended Complaint, Mr. King was wrongfully convicted of a rape and murder that he did not commit. Dckt. 45 at ¶ 6.

Without re-counting every detail, pertinent facts for present purposes include: Crystal Hudson was raped and murdered sometime between the evening of June 20, 1994 to the morning of June 22, 1994. Her naked body was hidden in a closet in her apartment. *Id.* at ¶ 27. The physical injuries to Ms. Hudson's body—including hemorrhaging of her rectum, hits and scrapes on the head, and being strangled—and the presence of sperm found in the rectum were consistent with anal rape, and demonstrated that the rape and murder happened at the same time. *Id.* at ¶¶ 28, 29, 30. Contemporaneous DNA testing was done on vaginal and rectal smears and fingernail scrapings recovered from Ms. Hudson's body. *Id.* at ¶¶ 31, 32.

The Police Defendants' investigation revealed that Mr. King had nothing to do with the crimes. *Id.* at ¶ 37. Most importantly, Mr. King was not the source of the DNA found on the vaginal or rectal smears or fingernail scrapings recovered from Ms. Hudson's body. *Id.* at ¶¶ 32, 33, 34, 41, 42.

Because DNA evidence from the vaginal and rectal smears demonstrated conclusively that Mr. King did not rape Ms. Hudson, Forensic Defendants conspired with Police Defendants to fabricate forensic "science" to suggest that the rape was not contemporaneous with the murder. *Id.* at ¶¶ 59, 61. Specifically, Plaintiff's Amended Complaint alleges that the following evidence was fabricated by the Forensic Defendants:

- false opinions by Defendants Challener and/or Balraj that the sperm cells found in Ms. Hudson's rectum were likely deposited days before the murder and as a result of consensual sexual intercourse, *id.* at ¶ 61;
- false reports by Defendants Challener and/or Balraj that there were "few" intact sperm and sperm heads on the vaginal and rectal smears, *id.* at ¶ 66, when the physical evidence at the time showed that there

2

was a large number of "intact" sperm and sperm heads, which was strong evidence that the rape happened contemporaneous with the murder, *id.* at ¶ 69;

- false opinions by Defendant Challener and/or Balraj suggesting that sperm was only found in Ms. Hudson's vagina, when the physical evidence at the time showed that sperm was also found in Ms. Hudson's rectum, which was strong evidence of trauma stemming from a rape, *id.* at ¶ 70;

- a fabricated report by Defendant May in which she knowingly and falsely misrepresented the amount of sperm in her analysis, in order to bolster the false opinion that the low quantity of sperm supported that the rape was not contemporaneous with the murder, *id.* at ¶ 72;

- a false opinion by Defendant May about the likely deposit of the semen/sperm based on the purported absence of a protein — P30— from the semen analyzed from the vaginal and rectal smears, *id.* at ¶ 74. May falsely opined that the absence of P30 in the semen taken from the vaginal and rectal smears meant that the semen was deposited days before the murder when at the time, it was generally understood in the serology field that the inability to detect P30 from semen says nothing about when the semen was deposited, *id;*

- a false report by Defendant May that stated there was a "negative P30 reaction" for semen analyzed from Ms. Hudson's vaginal and rectal swabs when in fact there was a "positive P30 reaction," for semen on the swabs, *id.* at ¶ 76.

The misconduct did not stop there. Perhaps most egregiously, Defendant May withheld an additional report for over 24 years which found there was a "positive P30 reaction" for semen analyzed from Ms. Hudson's vaginal and rectal swabs; *id.* at ¶¶ 76-77. County Defendants did not disclose this report until December 2018 in this civil lawsuit. *Id.*

Plaintiff further alleges that Defendants Balraj and Challener supervised Defendant May, and by signing off on her report that falsely described semen evidence, approved the misconduct of their subordinate. *Id.* at ¶¶ 23, 75, 151-156. In addition, the Forensic Defendants hid and/or destroyed exculpatory evidence that could have been used to show that they had fabricated evidence, including: microscopic slides prepared at Ms. Hudson's autopsy; all of the microscopic slides prepared by the Cuyahoga County Crime Lab; and all of the laboratory bench notes from the testing. *Id.* at ¶ 82.

3

Finally, to shore up their case against Mr. King with the false forensic evidence, Police and Forensic Defendants conspired not to seek to have the DNA evidence recovered from Ms. Hudson's body uploaded into a national database to compare it with other DNA profiles; and to hide physical evidence that was collected so that Mr. King could not have that evidence further tested. *Id.* at ¶¶ 43, 83.[1]

The conspiracy between Police and Forensic Defendants was a success: through numerous violations of Mr. King's constitutional rights, Defendants were able to secure the wrongful conviction of Mr. King for crimes he did not commit. *Id.* at ¶¶ 84, 88.

## LEGAL STANDARD

The standard for deciding a motion under Rule 12(c) is the same as that for deciding a motion under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Nuchols v. Berrong*, 141 F. App'x 451, 453 (6th Cir. 2005).

In resolving County Defendants' motion to dismiss, the Court must construe the Complaint "in the light most favorable to the plaintiff and accept all factual allegations as true." *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 785 (6th Cir. 2016) (internal quotation marks and citation omitted). To survive a motion to dismiss, the Complaint need only include sufficient factual allegations to state a plausible claim for relief. A plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's allegations meet that standard.

---

[1] For their part, the Police Defendants also fabricated inculpatory statements from Plaintiff, *id.* at ¶¶ 44-54, and from the victim's daughters, *id.* at ¶¶4 5-48, and they hid exculpatory statements from daughters and at least one other witness, *id.* ¶¶ 49-51.

The core issue in evaluating motions to dismiss remains one of notice: "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," it need only "assert sufficient facts to provide the defendant with "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; see also, e.g., *Southeastern Milk*., 555 F.Supp.2d at 943 (holding that a complaint need not address all "specific questions about "who, what, when and where," so long as the factual allegations "put defendants on notice concerning the basic nature of their complaints against the defendants and the grounds upon which their claims exist").

## ARGUMENT

I.     **The Court Should Deny County Defendants' Motions Because They Are Premature**

A.     **County Defendants Filed Their Rule 12(c) Motions Before The Pleadings Were Closed**

Under Federal Rule of Procedure 12(c), a motion for judgment on the pleadings cannot be filed until the pleadings are "closed." Specifically, Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Although it does not appear that the Sixth Circuit has directly addressed this issue, a number of district courts in this and other circuits addressing this issue have held that pleadings are not 'closed' until every defendant has filed an answer." *Dunn-Mason v. JP Morgan Chase Bank Nat. Ass'n,* 2013 WL 4084676, *4 (E.D. Mich. Aug. 13, 2013); *see also Wells Fargo Fin. Leasing, Inc. v. Griffin,* 97. F. Supp. 2d 700, 705 (E.D. Ky. 2013) ("[B]ecause Griffin has not filed an answer, not all Defendants have answered the Complaint. . . . Thus, the pleadings in this matter are not "closed" for purposes of rule 12(c)."); *Kowall v. GMAC Mortg., LLC*, 2012 WL 884851, *1 (E.D. Mich. Mar. 15, 2012) (pleadings do not close for purposes of a Rule 12(c) motion until defendants have filed an answer to the

complaint); *Horen v. Board of Educ. of Toledo City Sch. Dist.*, 594 F. Supp.2d 833, 840 (N.D. Ohio 2009) ("If a case has multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed.") (citing *Habeeba's Dance of the Arts., Ltd. v. Knoblauch*, 2006 WL 968642, *2 (S.D. Ohio Apr. 10, 2006)); *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Sons, Inc. Emp. Health & Welfare Plan*, 2009 WL 5247486, *1 (S.D. Ohio Dec. 31, 2009) ("Thus, the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering."); *Doe v. United States*, 419 F.3d 1058, 1061-62 (9th Cir. 2005); *Progressive Casualty Ins. Co. v. Estate of Crone*, 894 F. Supp. 383, 385 (D. Kansas 1995); *Signature Combs, Inc. v. United States,* 253 F. Supp. 2d 1028, 1030-31 (W.D. Tenn. 2003).

The "pleadings" stage in this case continues to be open because numerous Defendants have not yet answered Plaintiff's Amended Complaint. To date, the Police Defendants and Defendant City of Cleveland have yet to file an Answer to Plaintiff's Amended Complaint. Instead, they moved to dismiss. *See* Dckt. 49, 54. Because the pleadings stage remains open, County Defendants' Rule 12(c) motion for a judgment on the pleadings should be denied, as it is entirely premature at this juncture of the litigation.

Plaintiff recognizes that courts maintain discretion in certain circumstances to consider a Rule 12(c) motion even where not all defendants have filed an answer. *See Dunn-Mason*, 2013 WL 4084676, at * 4. But that this is only appropriate "in limited circumstances, such as when a plaintiff fails to serve one of the defendants." *Id.*; *see also Moran v. Peralta Comty. Coll. Dist.*, 825 F. Supp. 891, 894 (N.D. Cal. 1993) (holding that a particular defendant had not been served and was not yet a party and the pleadings were therefore "closed" for the purposes of the 12(c) motion); *Noel v. Hall*, 2005 WL 2007876, *2 (D. Or. Aug. 16, 2005) (considering motion for

6

judgment on the pleadings where other two defendants had not answered the complaint for five years and the motion only sought to resolved a legal issue without dismissing any claims). None of those limited circumstances justify considering a motions in this case, as all the Defendants have been served.

### B. County Defendants Are Estopped from Filing Post-Answer Rule 12(b)(6) Motions

Not only do none of the circumstances justify County Defendants' Rule 12(c) motions being considered at this stage of the litigation, there is also nothing that supports a conversion of County Defendants' Rule 12(c) motions into Rule 12(b)(6) motions to dismiss. To the contrary, County Defendants are estopped from filing such a motion at this point in the litigation.

A motion to dismiss under Fed. R. Civ. P 12(b)(6) is required to be made before a responsive pleading is served. Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is required."); *Wesley v. Rigney*, 913 F. Supp. 2d 313, 319 (E.D. Ky. 2012) ("Defendant filed a timely Rule 12(b)(6) motion by filing it prior to filing an answer to the amended complaint.") (quoting Fed. R. Civ. P. 12(b)).

County Defendants made a strategic decision to file an Answer to Plaintiff's Complaint on April 2, 2019. *See* Dckt. 47. In that Answer, County Defendants specifically mentioned a number of affirmative defenses that they would rely upon in this litigation. Each of those defenses forms the basis of the untimely motions for judgment on the pleadings. Since County Defendants answered the Complaint instead of failing a motion to dismiss, they are now estopped from filing a Rule 12(b)(6) motion to dismiss.

Courts in this circuit in similar circumstances as here have declined the opportunity to convert Rule 12(c) motions to Rule 12(b)(6) motions. *See e.g., Hoskins v. Knox Cty., Kentucky*, 2018 WL 1352163, at *4 (E.D. Ky. Mar. 15, 2018) (finding unpersuasive other Sixth Circuit

7

district courts' consideration of premature Rule 12(c) motions and permitting of post-answer Rule 12(b)(6) motions, explaining that "[T]he Court refuses to relax the requirements of the Federal Rules of Civil Procedure to permit procedurally improper motions."); *Nat'l Bankers Trust Corp. v. Peak Logistics LLC*, 2013 WL 3070843, at *3 (W.D. Tenn. June 17, 2013) (declining to exercise its discretion to construe and consider defendants' filing as either post-answer motions to dismiss or premature motions for judgment on the pleadings); *Local 109 Bd. of Tr. of the Operative Plasterers and Cement Masons Pension Fund v. All Am. Acoustic and Drywall*, 2016 WL 5232828 (N.D. Ohio Sept. 22, 2016) (same). The Court should similarly decline to consider County Defendants' filings and deny the motions.

## II.     Plaintiff's Federal Claims Are Viable

In addition to being premature, County Defendants' Rule 12(c) motions also fail on the merits. As explained below, all of Plaintiff's Section 1983 claims against the County Defendants are sufficiently pled. At the motion to dismiss stage, Plaintiff has provided sufficient facts to state his claims, and he should be allowed to proceed to discovery.

### A.   Plaintiff Sufficiently Alleges A Due Process Claim Against County Defendants for Fabricating Evidence and/or Withholding Exculpatory Evidence

Plaintiff brings a due process claim under the Fourteenth Amendment alleging that his right to a fair trial was violated. Dckt. 45 at ¶¶ 100-121. Plaintiff has laid out in the Amended Complaint several different ways in which Defendants rendered Plaintiff's criminal trial unfair, all of which amount to a claim that the Defendants violated his right to due process. Relevant here, a plaintiff can pursue a due process claim when defendants withhold exculpatory evidence. *Mills v. Barnard*, 869 F.3d 473, 485 (6th Cir. 2017) ("Limiting review to Mills's complaint, it is clear that the complaint alleges that the DNA evidence suppressed was that which was in

Jenkins's possession[.]"). Similarly, investigators violate due process when they fabricate

evidence. *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) (police fabrication of

evidence violates due process when a reasonable likelihood exists that the false evidence would

have affected the decision of the jury); *see also Spurlock v. Satterfield*, 167 F.3d 995, 998–99,

1005–06 (6th Cir. 1999); *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997). In other

words, multiple several legal theories may support a claim that a plaintiff's due process right to a

fair trial was violated.

Here, Plaintiff's Amended Complaint refers to at least two legal theories which support

his due process claim: the fabrication of inculpatory evidence and withholding of exculpatory or

impeaching evidence. Dckt. 45 at ¶ 102-103 ("Defendants fabricated and solicited false

evidence, including testimony that they knew to be false, implicating Plaintiff in the crime,

obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence

that they knew to be false when it was used against Plaintiff at his criminal trial."); *id.* at ¶ 102

("Defendants deliberately withheld exculpatory evidence from Plaintiff and from state

prosecutors, among others, thereby misleading and misdirecting the criminal prosecution of

Plaintiff.").

### 1. Plaintiff Adequately Pleaded a Fabrication of Evidence Claim

Plaintiff has provided ample facts in his complaint to state a claim for a due process

violation based on a fabrication of evidence theory of liability. Plaintiff alleges that Defendants

May and Balraj fabricated physical evidence to make it appear that the rape did not occur

simultaneously with the murder of Ms. Hudson, contrary to the physical evidence. Dckt. 45 at

¶¶ 55-71. They did this by offering false opinions that the quality and quantity of the sperm cells

found in Ms. Hudson's rectum meant that the sperm was likely deposited days before the murder

and as a result of consensual sexual intercourse, *id.* at ¶¶ 61, 72; authoring false reports that there were "few" intact sperm and sperm heads on the vaginal and rectal smears, *id.* at ¶ 66, when the physical evidence at the time showed that there were a large number of "intact" sperm and sperm heads, which was strong evidence that the rape happened contemporaneous with the murder, *id.* at ¶ 67; falsely suggesting that sperm was only found in Ms. Hudson's vagina, when the physical evidence at the time showed that sperm was also found in Ms. Hudson's rectum, which was strong evidence of trauma stemming from a rape, *id.* at ¶ 70; offering false opinions about the significance of the presence or absence of the P30 protein in the semen analyzed from the vaginal and rectal smears; *id.* at ¶ 74; and fabricating reports about the absence of the P30 protein in the semen analyzed from the vaginal and rectal smears, when in fact, p30 was present in the semen, *id.* at ¶¶ 76-77.[2]

"The basis of a fabrication-of-evidence claim under § 1983 is an allegation that a defendant 'knowingly fabricated evidence against [a plaintiff], and [that] there is a reasonable likelihood that the false evidence could have affected the judgment of the jury.'" *Mills*, 869 F.3d at 484 (quoting *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997). Plaintiff readily meets this standard—his complaint alleges that the fabricated inculpatory statements were

---

[2] County Defendants make a passing reference to being protected by absolute testimonial immunity. Dckt. 61 at 4-5. This threadbare argument should be summarily disregarded. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to…put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) (internal quotation marks omitted)). Demanding that parties develop arguments supported by the law and the facts "is not a new proposition." *Brenay v. Schwartow*, 709 F. App'x 331, 337 (6th Cir. 2017) (unpublished). Regardless, Plaintiff's claims relate to the pretrial fabrication of evidence against Plaintiff, which are actionable even though Defendant May later testified consistently with those fabrications. *See Gregory*, 444 F.3d at 741 (pretrial fabrication of evidence by government official is actionable even if later testimony is provided that is consistent with the fabrication) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)); *Spurlock*, 167 F.3d at 1002.

instrumental in obtaining his conviction. Dckt. 45 at ¶¶ 103, 106. This is sufficient to state a fabrication of evidence claim.

Defendants do not challenge the sufficiency of Plaintiffs' factual allegations relating to Forensic Defendants' fabrication of evidence. Instead, they point to documents outside the complaint and argue that the documents—various reports purportedly from the victim's autopsy authored by the Forensic Defendants—show that they did not fabricate evidence. Dckt. 61 at 6-7. This argument fails.

First, on a motion to dismiss, a court generally may not consider any facts outside the complaint. *See, e.g.*, *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). The Sixth Circuit allows courts to consider documents outside the complaint at this stage in very limited circumstances: when they are extensively part of the claims, such as a breach of contract claim where the contract itself is critical to the claim, and/or when the parties agree that they can be considered. *In re Fair Finance Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016). That is not the case here. The additional materials County Defendants rely on in support of their motions were not attached to the Plaintiff's complaint or critical to it. Courts have declined to consider documents outside the complaint in similar circumstances. *See e.g.*, *Kostrzewa v. City of Troy*, 247 F.3d 633, 643–44 (6th Cir. 2001) (in malicious prosecution case where plaintiff alleged that the criminal proceedings terminated in his favor, district court erred in considering plea agreement provided by the defendant in its motion to dismiss because it was not attached to the complaint and not central to the claim); *Ferron v. Echostar Satellite, LLC*, 2007 WL 9728914, at *2 (S.D. Ohio Mar. 23, 2007) (in Ohio Consumer Sales Practices Act case, declining to consider report of defendant that company was exempt from liability because the case "does not fall within any of

11

the exceptions to the rule that a motion to dismiss must be limited to the allegations set forth in the complaint or any documents attached to it").

Second, even if the Court to consider the documents, they provide no support to dismiss Plaintiff's due process claim based on fabrication of evidence. Plaintiff's Amended Complaint does not dispute the language in the reports. Plaintiff's allegations are that the reports are false. For example, Plaintiff alleges that the Forensic Defendants authored false reports that stated there were "few" intact sperm and sperm heads on the vaginal and rectal smears from Ms. Hudson's body, Dckt. 45 at ¶ 66, when the physical evidence at the time showed that there were a large number of "intact" sperm and sperm heads, which was strong evidence that the rape happened contemporaneous with the murder, *id.* at ¶ 67. As another example, Defendant May's report falsely stated there was a "negative P30 reaction" for semen analyzed from Ms. Hudson's vaginal and rectal swabs, when in fact, as the Amended Complaint alleges, there was a "positive P30 reaction," for semen on the swabs. *Id.* at ¶ 76. Therefore, even though the reports should not be considered, the reports themselves do not contradict Plaintiff's claims and do not allow Forensic Defendants to escape liability for violating Plaintiff's right to due process. *See*, *e.g.*, *Banks v. Dretke*, 540 U.S. 668, 694 (2004) (use of false evidence in criminal proceedings violates due process).

In sum, Plaintiff's Amended Complaint adequately alleges fabricated evidence was used to deprive him of his liberty, putting County Defendants on notice of the misconduct they are alleged to have committed. His due process claim based on this theory must proceed.

### 2. Plaintiff Adequately Pleaded a *Brady* Claim

Plaintiff also alleges that he was denied a fair trial because exculpatory and/or impeaching evidence was withheld from him. Dckt. 45 at ¶ 102. Specifically, Plaintiff alleges

that Defendant May hid a report for over 24 years which found there was a "positive P30 reaction" for semen analyzed from Ms. Hudson's vaginal and rectal swabs; *id.* at ¶¶ 76-77. Additionally, the Forensic Defendants hid and/or destroyed exculpatory evidence that could have been used to show that they had fabricated evidence, including: microscopic slides prepared at Ms. Hudson's autopsy; all of the microscopic slides prepared by the Cuyahoga County Crime Lab; and all of the laboratory bench notes from the testing. *Id.* at ¶ 82.

Withholding exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) violates due process. *See D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014) (*Brady* requires officials to disclose evidence whose exculpatory value is apparent).

As with Plaintiff's allegations relating to fabrication of evidence, Defendants do not challenge the sufficiency of Plaintiffs' factual allegations relating to withholding exculpatory evidence. Instead, they ask the Court to presume their version of the facts is true and simply state that they did not withhold exculpatory evidence. Dckt. 61 at 5-6. This is inappropriate at the motion to dismiss stage. More importantly, Defendants' argument is belied by the allegations in Plaintiff's Amended Complaint. Plaintiff alleges that Defendant May a report for over 24 years which found there was a "positive P30 reaction" for semen analyzed from Ms. Hudson's vaginal and rectal swabs; *id.* at ¶¶ 76-77. Plaintiff further alleges that the Forensic Defendants hid and/or destroyed exculpatory evidence that could have been used to show that they had fabricated evidence, including: microscopic slides prepared at Ms. Hudson's autopsy; all of the microscopic slides prepared by the Cuyahoga County Crime Lab; and all of the laboratory bench notes from the testing. *Id.* at ¶ 82. As these allegations more than satisfy the plausibility standard; Defendants' version of the facts should not be credit here.

Ultimately, Plaintiff's factual allegations permit the reasonable inference that his due process rights were violated when Defendants withheld exculpatory evidence. *See also U.S. v. Bagley*, 473 U.S. 667 (1985) ("The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur."). Accordingly, the due process claim is also supported by facts alleging a *Brady* violation.

### B.  Plaintiff's Amended Complaint Sufficiently Alleges a Malicious Prosecution and/or Deprivation of Liberty Without Probable Cause Claim

Plaintiff claims that Defendants held him without probable cause in violation of his rights under the Fourth and Fourteenth Amendments. Dckt. 45 at ¶¶ 121-130. Plaintiff had a right to be free from continued detention without probable cause under the Fourth Amendment. *Manuel v. City of Joliet*, 137 S. Ct. 911, 918-19 (2017). In *Manuel*, the Supreme Court held that "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Id.* at 918. The Sixth Circuit recognized such a claim long before the Supreme Court decided *Manuel*. *See Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006); *Gregory*, 444 F.3d at 749-50; *Spurlock*, 167 F.3d at 1004-06.

A plaintiff in a § 1983 action alleging continued detention without probable cause or unreasonable prosecutorial seizure under the Fourth Amendment must prove the following: (1) "a criminal prosecution was initiated against the plaintiff and that the defendant made, influenced, or participated in the decision to prosecute"; (2) lack of probable cause for the criminal prosecution; (3) plaintiff suffered a deprivation of liberty; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th

Cir. 2010). County Defendants argue that Plaintiff's allegations do not support the first and fourth elements above. Dckt. 61 at 8-9. They are wrong.

Plaintiff sufficiently alleges that Forensic Defendants acting as investigators (working individually and/or in conspiracy) "exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without probable cause." Dckt. 45 at ¶ 158. Contrary to Defendants' argument, Forensic Defendants need not have been the ones to decide whether to prosecute (that is a prosecutor's job). Rather, the fact that Forensic Defendants influenced the decision to prosecute or caused the detention to be unlawfully continued by fabricating evidence and withholding exculpatory evidence supports the first element above. *See Gregory*, 444 F.3d at 747.

To show that a government official, acting under color of law, influenced the commencement of criminal proceedings, a plaintiff can present evidence that the impact of the misstatements and falsehoods in investigatory materials ultimately influenced the plaintiff's continued detention. *See Sykes*, 625 F.3d at 316. Such "influence" can be based on "misstatements...to the prosecutor" or "pressure or influence" over an individual who either made the decision to prosecute or testified at the preliminary hearing. *Id.* That standard is satisfied where the official's investigatory materials, which were in the prosecutor's file, contained "knowing misstatements," and the prosecutor relied on them in filing criminal charges or continuing detention. *Id.* at 316-17. A plaintiff does not have to show that the official actually spoke to the prosecutor. *Id; see also Malley v. Briggs*, 475 U.S. 335, 337 (1986) (normal causation principles apply to Section 1983 actions); *accord Sykes*, 625 F.3d at 314-15. Plaintiff has properly alleged that Forensic Defendants influenced the decision to prosecute Plaintiff. Dckt. 45 at ¶ 122.

Similarly, Plaintiff properly alleges that the underlying criminal proceedings concluded in his favor. Dckt. 45 at ¶ 129. Section 1983 requires courts to borrow accrual rules from the common-law tort that provides the "closest analogy" to the constitutional claim at issue. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Heck*, 512 U.S. at 484)). In *Wallace*, the Supreme Court explained that a claim, as here, for unlawful detention between the initiation of legal process and trial most closely resembles the "tort of malicious prosecution." *Id.* at 390. After all, when the pretrial detention was condoned through legal process, a challenge to detention is tied to the legitimacy of the prosecution. And "[o]ne element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck*, 512 U.S. at 484 (quoted in *Sykes*, 625 F.3d at 609).

The charges against Plaintiff were dismissed without prejudice, which is a favorable termination for purposes of this § 1983 claim because it is only at that point (when Plaintiff's criminal charges were dismissed) that he was no longer barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), from bringing his § 1983 Fourth Amendment claim. *See Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (holding that *Heck* bar does not lift until the criminal proceeding is fully terminated); *see also Dawson v. Monroe Cnty.*, 2014 WL 700400, at *5-6 (E.D. Tenn. Feb. 24, 2014) (dismissal of indictment without prejudice satisfies the favorable termination requirement of a § 1983 Fourth Amendment malicious prosecution claim). Even if the Court were to look to the favorable termination element of Ohio malicious prosecution, dismissal of charges without prejudice constitutes favorable termination of criminal proceedings. *See Linetsky v. City of Solon*, 2016 WL 6893276, at *13 (N.D. Ohio Nov. 23, 2016) (holding that plaintiff's criminal prosecution was terminated in his favor where the charges were dismissed without prejudice). In fact, courts routinely allow deprivation of liberty claims to proceed when the

16

underlying criminal proceedings have been dismissed without prejudice or through *nolle prosequi. See, e.g., Barnard*, 869 F.3d at 480; *Gokor v. Schlievert*, 335 F. Supp. 3d 972 (N.D. Ohio 2018); *Ayers v. City of Cleveland*, 2013 WL 775359, at \*10 (N.D. Ohio Feb. 25, 2013) (similar procedural history as here including no evidence that charges would be refiled in accord with Ohio's speedy trial act).

Finally, County Defendants are wrong when they argue that Plaintiff's conviction has not been reversed or invalidated because the prosecutors dismissed the conviction without prejudice. Dckt. 61 at 9. The Ohio Court of Appeals expressly overturned Plaintiff's conviction. *See State of Ohio v. King*, 2017 WL 242059 (Ohio Ct. of App. Jan. 19, 2017). County Defendants suggest that Plaintiff has to establish a judicial finding of innocence to proceed on his claim that he was unlawfully detained without probable cause. No authority requires that level of adjudication in Plaintiff's favor for him to proceed on this federal claim. His allegations are viable.[3]

---

[3] County Defendants also make a cursory argument that Plaintiff's *Brady* claim has not accrued because his criminal conviction was only vacated, and not reversed, and point to *Jordan v. Blount Cty.*, 885 F.3d 413, (6th Cir. 2018) in support. Dckt. 61 at 5. This argument has no merit. In *Jordan*, the Sixth Circuit held that a *Brady* claim under § 1983, like a malicious prosecution claim, accrues when a criminal proceeding terminates in favor of the accused. 885 F.3d at 415. As just explained, *see supra* Section II(B), the criminal proceedings terminated in Plaintiff's favor in October 2017 when Plaintiff's criminal charges were dismissed. Contrary to Defendants' assertion, *Jordan* does not dictate that a plaintiff's conviction must be reversed in order for his *Brady* claim to accrue—in that case, the Sixth Circuit held that Jordan's *Brady* claim did not accrue when the state court of appeals set aside Jordan's conviction and remanded the case to trial court because, at that point, the criminal proceedings against Jordan did not terminate. *Id.* Jordan was retried. *Id.* By contrast, here, King's conviction was not only vacated in October 2017—the charges against him were dismissed. This satisfies the favorable termination element, making Plaintiff's *Brady* claim ripe for adjudication.

17

### C. Plaintiff's Amended Complaint Sufficiently Alleges Claims of Conspiracy Against County Defendants

To survive a motion to dismiss a conspiracy claim, a plaintiff must only plead that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed' in furtherance of the conspiracy that caused the injury." *Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905–06 (6th Cir. 2004). Importantly, the character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole. *Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962). In addition, courts have recognized that the very nature of a conspiracy prevents plaintiffs from asserting which of many individual defendants is responsible for particular misconduct. *See, e.g., Quinones v. Szorc*, 771 F.2d 289, 291 (7th Cir. 1985) ("The very nature of a conspiracy obscures most, if not all, information about the alleged conspirators' agreement; circumstantial evidence of the conspiracy, particularly regarding the overt acts performed in furtherance of the conspiracy, is all that is ordinarily obtainable before discovery and trial. This is particularly true where, as here, much of the information regarding...the formation of the conspiracy [is] in the hands of the defendant."); *see also Womack v. Conley*, 595 F. App'x 489, 2014 WL 6997493, at *4 (6th Cir. Dec. 11, 2014) ("Because direct evidence of civil conspiracy is often unavailable, it is enough for the plaintiff to plead circumstantial evidence from which the existence of a conspiracy can be reasonably inferred.").

Here, the Amended Complaint's conspiracy allegations readily satisfy Rule 8. Plaintiff has identified the aim of the agreement: to falsely implicate him and secure his conviction for crimes he did not commit. *E.g.*, Dckt. 45 at ¶¶ 138-144. Plaintiff has identified the co-conspirators: the Police and Forensic Defendants. *E.g., id.* at ¶¶ 11-12. And, Plaintiff has

18

identified numerous overt acts taken in furtherance of this conspiracy by the co-conspirators. *See generally id.* at ¶¶ 37-54, 55-83.[4]

In short, because Plaintiff's factual allegations of conspiracy are detailed and specific, and not "conclusory" or "speculative," Dckt. 61 at 12, the Court should not dismiss Plaintiff's conspiracy claim against Forensic Defendants.

### D.  Plaintiff's Failure to Intervene Claim is Viable

Plaintiff's failure to intervene claim against the Forensic Defendants should proceed. To state a cause of action for failure to intervene Plaintiff must allege that a constitutional violation occurred, that the defendant knew about the constitutional violation, and that the defendant had a reasonable opportunity to prevent it. *Tinney v. Richland Cty.*, 2015 WL 542415 at *10 (N.D. Ohio Feb. 10, 2015), *aff'd in part*, 678 F. App'x 362 (6th Cir. 2017) (citing *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997)).  Whether a defendant had a reasonable opportunity to intervene is typically a jury question. *Goodwin v. City of Painesville*, 781 F.3d 314, 328-29 (6th Cir. 2015). Where, as here, the Plaintiff alleges that he was deprived of his liberty as a result of Defendants' fabrication of evidence, it is plausible to infer that each Defendant was aware of the deprivation of liberty and could have done something to stop it. *Anderson v. Knox Cty*, 2018 WL 7500205 (E.D. Ky. Oct. 3, 2018) ("[Plaintiff] plausibly alleges § 1983 claim…[Plaintiff] has alleged that the defendants were aware of the continued violation of his constitutional rights (fabrication of

---

[4] In addition, County Defendants' premise assumes that they can be liable only for their own actions, but this is not the case. Instead, it is well established that a co-conspirator is liable for actions of their co-conspirators in furtherance of that conspiracy and County Defendants can be liable as such. *See Hooks*, 771 F.2d at 943- 44; *United States v. Frost*, 914 F.2d 756, 762 (6th Cir. 1990) (noting that "each member of a conspiracy becomes responsible for acts in furtherance of the conspiracy committed by his co-conspirators"); *cf. Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002) (noting that, "in civil as in criminal law" a conspirator is liable "for the wrongful acts of the other conspirators committed within the scope of the conspiracy."); *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d. Cir. 1981) ("A conspiracy is alleged for the purpose of showing that a wrong was committed jointly by the conspirators and that, because of their common purpose and interest, the acts of one may be imputed to the others.").

evidence) and that, despite realistic opportunities to intervene to prevent or stop the harm and the ability to do so, none of the defendants intervened on his behalf.").

Taking all allegations in the Amended Complaint as true, which the Court must at this stage, Forensic Defendants *did* have the ability to intervene to prevent Plaintiff's wrongful conviction, which was accompanied by numerous violations of his constitutional right to a fair trial. Any of the Forensic Defendants could have intervened to stop the constitutional violations long before trial. For example, Forensic Defendants could have intervened during the fabrication of evidence at the coroner's office; told the prosecutor or the defense pretrial that Plaintiff was incarcerated based on false evidence; or revealed the truth during the course of trial. *Id.* at *9 ("Anderson has alleged that the defendants were aware of the continued violation of his constitutional rights and that, despite realistic opportunities to intervene to prevent or stop the harm and the ability to do so, none of the defendants intervened on his behalf…[t]he Court finds sufficient factual allegations to support his claim that the defendants failed to intervene on his behalf.").

### E.  Plaintiff's Claim Against Defendants Challener and Balraj for Failing to Supervise is Viable

Plaintiff's claim against Defendants Balraj and Challener for failing to supervise is actionable. A supervisory official is liable for a constitutional violation for failure to supervise, train, or control a subordinate employee if she "'either encouraged the specific incident or misconduct or in some other way directly participated in it.'" *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)) "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Shehee*, 199 F.3d at 300. In short, "personal liability against a supervisor requires more than *respondeat*

superior." *Phillips v. Roane County, Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008) (quoting *Shehee*, 199 F.3d at 300).

Plaintiff adequately alleges a claim for supervisory liability. Dckt. 45 at ¶¶ 151-156. Plaintiff alleges that Defendants Balraj and Challener were not only aware of these types of misconduct under their watch—they allowed the misconduct to flourish. *Id.* Plaintiff further alleges that Defendants Balraj and Challener signed off on the fabricated evidence. *Id.* at ¶ 103. Indeed, Defendant Balraj signed the falsified autopsy report that mischaracterized the forensic findings related to semen in the victim's rectum, demonstrating direct participation with her subordinates. *Id.* The Sixth Circuit has found supervisory liability in such circumstances. *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (finding complaint plausibly pleaded supervisor liability when it pleaded that the supervisor acquiesced in the unconstitutional conduct of subordinates through his job function and plausibly caused the constitutional violation at issue); *see also Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (concluding that allegations and evidence that a supervisor failed to intervene in ongoing misconduct gives rise to a claim of supervisory liability). As such, the Court should not Plaintiff's supervisory liability claim.

## II.  Forensic Defendants Are Not Entitled to Qualified Immunity

County Defendants contend that Plaintiff's claims for due process, malicious prosecution, deprivation of liberty without probable cause, civil conspiracy, failure-to-intervene and supervisory liability should be dismissed on the basis of qualified immunity. Dckt. 61 at 12-14. They are wrong for two reasons.

First, qualified immunity is almost never ground for dismissal at the pleadings stage, and that is certainly true here, where the complaint contains everything required to state a § 1983

claim based on constitutional violation of the rights protected by the Fourth and Fourteenth Amendments. *See Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) ("It is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.") (internal citations and quotation marks omitted).

Second, none of the Forensic Defendants will ever be entitled to qualified immunity on these claims—regardless of the stage of the case—because it was clearly established at the time of Plaintiff's wrongful conviction in 1995 (and for many decades before that) that the Fourth and Fourteenth Amendments prohibited Defendants from fabricating evidence, withholding exculpatory evidence, maliciously initiating baseless criminal prosecutions against innocent individuals without any probable cause, unlawfully detaining individuals after legal process has commenced, conspiring to violate an individual's rights, failing to supervise, train, or control a subordinate employee causing the violation of an individual's rights, or failing to intervene in the violations of individuals' rights. In fact, there are few constitutional protections more deeply rooted than these. Only by misunderstanding the qualified immunity analysis in general do the County Defendants reach their erroneous immunity conclusion.

### A.  A Dismissal Based on Qualified Immunity Is Rarely Appropriate at the 12(b)(6) Stage and Is Certainly Not Appropriate In This Case

"Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal." *Wesley,* 779 F.3d at 434 (internal citations and quotations omitted). This is because all a plaintiff must do to state a claim under § 1983 is allege that a person acting under color of state law has deprived him of a federal right, *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); and the Supreme Court has warned that courts may never alter this basic pleading requirement of § 1983

22

claims simply because a defendant asserts a qualified immunity defense, *Crawford-El v. Britton*, 523 U.S. 574, 594-97 (1998); *see also Courtright v. City of Battle Creek*, 839 F.3d 513 (6th Cir. 2016) ("Although an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.") So long as the complaint satisfies Rule 8 with respect to both elements of a § 1983 claim, dismissal is inappropriate.

Plaintiff's Amended Complaint satisfies this standard easily. The Forensic Defendants are each state actors and none argues otherwise. And in more than 20 detailed paragraphs, Plaintiff's Amended Complaint provides detailed allegations of Defendants' fabrication of forensic evidence and withholding of exculpatory evidence. Dckt. 45 at ¶¶ 55-83. Among other things, Plaintiff alleges Forensic Defendants fabricated physical evidence to make it appear that the rape did not occur simultaneously with the murder of Ms. Hudson, contrary to the physical evidence. *Id.* They did this by intentionally misstating scientific evidence to make it falsely appear that the semen was deposited long before the murder could have happened. *Id.* This fabrication had no basis in science, and Defendants knew that. *Id.*

Forensic Defendants further fabricated the scientific significance of the sperm found in Ms. Hudson's rectum, downplaying the source and relevance of it, which was contrary to the known science at the time. *Id.* They opined that the sperm came only from the victim's vaginal cavity when independent evidence supports that there was a deposit of semen in the victim's rectum, which also showed signs of hemorrhaging, providing strong evidence of an anal rape simultaneous with the murder. *Id.* Defendant May fabricated a report about the absence of the P30 protein in the semen analyzed from Ms. Hudson's vaginal and rectal smears, and hid a report for 24 years showing that P30 was in fact present. Finally, Forensic Defendants hid and/or

23

destroyed the underlying forensic evidence and notes of the testing to prevent anyone else from testing the evidence and/or discovering the above fabrications. Plaintiff plausibly pleads that the state-actor County Defendants deprived him of his right to a fair trial by fabricating evidence and withholding exculpatory evidence, maliciously prosecuting him, detaining him unlawfully after the initiation of legal process, conspiring, failing to supervise, and failing to intervene at any point to stop these constitutional violations. His complaint satisfies Rule 8 and nothing more is required at this stage of the case.

**B. The Police Defendants' Misconduct in 1995 Violated Clearly Established Rights**

By 1995, it was clearly established that it was unconstitutional for a state actor to fabricate evidence. Nevertheless, County Defendants suggest that personnel from a coroner's office are inherently immune from a due process suit. Dckt. 61 at 12-14. This suggestion is contrary to a long line of cases. Forensic officials have long been found to fall within the due process requirements under *Brady* and to be forbidden from fabricating evidence. *See Gregory*, 444 F.3d at 744-45 (denying qualified immunity to police lab analyst for fabricating notes stemming from a 1992 investigation); s*ee also LeFever v. Ferguson*, 645 F. App'x. 438 (6th Cir. 2016) (evaluating a §1983 *Brady* claim on the merits against coroner employees stemming from alleged misconduct in 1990 and *not* concluding that coroner employees are exempt from *Brady* or fabrication claims).

County Defendants go so far as to assert that the *Brady* requirement did not apply to police officers until 2009. Dckt. 61 at 13. They are wrong. In its 1963 *Brady* decision, the Supreme Court held that the State's withholding of exculpatory evidence deprived the criminal defendant of his constitutional right to due process, regardless of the underlying reasons. *Brady*, 373 U.S. at 87. This holding was based on the well-established principles of *Mooney v. Holohan*,

294 U.S. 103, 112 (1935) (*per curiam*), *Pyle v. Kansas*, 317 U.S. 213, 215-16 (1942), and *Napue v. Illinois*, 360 U.S. 264, 269 (1959). *See Brady* at 86-87; *United States v. Bagley*, 473 U.S. 667, 679 n.8 (1989). *Brady* had been firmly in place for more than three decades when the events underlying this case occurred in 1994-95.

The Sixth Circuit squarely rejected the exact assertion County Defendants' make here in *Moldowan*, explaining that the right had existed before *Kyles v. Whitley*, 514 U.S. 419 (1995), and that, as noted above, other circuits had recognized it as far back as 1964. 578 F.3d at 382. *Kyles* did not announce a new principle of law. *Jackson v. Brown*, 513 F.3d 1057, 1073 (9th Cir. 2008). Rather, *Kyles* simply and explicitly rejected the state's argument that "it should not be held accountable under *Bagley* and *Brady* for evidence known only to police investigators and not to the prosecutor." 514 U.S. at 438.

The Sixth Circuit has long concluded that government officials could be held liable for violating *Brady*. *See Hilliard v. Williams*, 516 F.2d 1344, 1349-50 (6th Cir. 1975), vacated in part, 424 U.S. 961 (1976) (holding that investigator who falsely testified at a defendant's trial and withheld exculpatory evidence violated due process principles as set forth in *Brady* and *Mooney* and could be liable in a § 1983 suit); *see also Spurlock*, 167 F.3d at 1005-06 (relying on *Pyle*, *Mooney*, and *Brady* to deny qualified immunity where officers in 1989 allegedly fabricated evidence, manufactured probable cause, and withheld this information from the prosecution).

Other circuits have long recognized this right as well. *See Moldowan v. City of Warren*, 578 F.3d 351, 382 (6th Cir. 2009) ("Decisions from other circuits recognizing the type of "*Brady*-derived" claims that Moldowan asserts here date back as far as 1964.") (citing *Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964)); *see also Walker v. City of New York*, 974 F.2d 293, 299 (2d Cir. 1992) (clearly established in 1971 that police had duty to

disclose *Brady* material); *Carrillo v. Cnty. of Los Angeles*, 798 F.3d 1210, 1220-22 (9th Cir.

2015) (clearly established as to police at least as of 1978); *Newsome v. McCabe*, 256 F.3d 747,

752–53 (7th Cir. 2001) (1979 police conduct); *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th

Cir. 1988) (1982 police conduct); *McMillian v. Johnson*, 88 F.3d 1554, 1569 (11th Cir. 1996)

(1987 police conduct).

Moreover, the Supreme Court has long held that the due process clause of the Fourteenth

Amendment prohibits the use of false evidence, including fabrications by public officials, in state

criminal prosecutions. *See Mooney*, 294 U.S. at 112 (state actors violate due process rights when

they "depriv[e] a defendant of liberty through a deliberate deception of court and jury by the

presentation of testimony known to be perjured"); *Brown v. Mississippi*, 297 U.S. 278, 286

(1936) (same); *Pyle*, 317 U.S. at 215-16 (allegations of false statements and perjured testimony

made under threat violates due process); *Napue*, 360 U.S. 264, 269 (1959) (same).

The Supreme Court's cases governing disclosure of evidence and those prohibiting

fabrication of evidence share precisely the same due process foundation, and their constitutional

rules apply equally to all state actors. *See, e.g.*, *Banks*, 540 U.S. at 694 (citing *Mooney* and *Giglio

v. United States*, 405 U.S. 150 (1972)); *see also Evans v. Kropp*, 254 F. Supp. 218, 222 (E.D.

Mich. 1966). These decisions put a reasonable forensic analyst on notice that participating in

fabricating inculpatory evidence and/or withholding exculpatory evidence was unlawful. *See

United States v. Lanier*, 520 U.S. 259, 271 (1997) ("[A] general constitutional rule already

identified in the decisional law may apply with obvious clarity to the specific conduct in

question.").

So, too, with Plaintiff's malicious prosecution claims. There can be no question  by 1995,

it was clearly established that a state actor who maliciously initiated a baseless criminal

26

prosecution against an individual without any probable cause violated an individual's rights.

*Hansen v. Westerville City Sch. Dist. Bd. of Educ.*, 1994 WL 622153, at *5 (6th Cir. 1994)

(explaining the elements of 'malicious prosecution' under Ohio law); *see also Trussell v.*

*General Motor Corp.*, 559 N.E.2d 732 (Ohio 1990).

Finally, County Defendants are not entitled to qualified immunity for their failure to

intervene, and Defendants Balraj and Challener are not entitled to qualified immunity for their

failure to supervise Defendant May. The Sixth Circuit has long recognized that state actors who

have a realistic opportunity to step forward and prevent the violation of a plaintiff's rights but

fail to do so may be held liable. *See e.g., Smith v. Ross*, 482 F.2d 33, 36–37 (6th Cir. 1973) ("We

agree with appellants that a law enforcement officer can be liable under § 1983 when by his

inaction he fails to perform a statutorily imposed duty…Acts of omission are actionable in this

context to the same extent as are acts of commission"). Likewise, it is well established that

supervisors who fail to train, supervise, and discipline their subordinate in a way that results in

constitutional violations may be held liable. *See e.g., Hays v. Jefferson County, Ky.*, 668 F.2d

869, 874 (6th Cir. 1982) (recognizing a supervisory official's failure to supervise, control, or

train is actionable when they "implicitly authorize[ ], approve[ ], or knowingly acquiesce[  ] in

the unconstitutional conduct of the offending officers.").

County Defendants' remaining argument for immunity is unavailing. They argue there

are no cases with the exact same facts as this one. Dckt. 61 at 14. But, that is not the standard for

qualified immunity. Analysis of whether a right was "clearly established" must occur in the

context of a particular case, not in the abstract or at too high a level of generality. *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987). And, in considering the clearly established law in context,

the core issue is notice. Put differently, the "'salient question . . . is whether the state of the law'

27

at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)).

For this reason, the Supreme Court has consistently rejected the notion that qualified immunity is confined to determining whether there is a case exactly on point; "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. at 741; *see also id.* ("Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding.") (citing *United States v. Lanier*, 520 U.S. 259 (1997)); *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866-67 (2017) ("It is not necessary, of course, that 'the very action in question has previously been held unlawful.' That is, an officer might lose qualified immunity even if there is no reported case 'directly on point.'" (quoting, respectively, *Anderson*, 483 U.S. at 640, and *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)).

Forensic Defendants had more than adequate notice here. They are not entitled to qualified immunity and their motions should be denied.

## III.    Plaintiff's Claims Against Defendant Estate of Challener Should Not Be Dismissed

Defendant Estate of Challener separately argues that the claims against him must be dismissed because an estate cannot be sued under Ohio law and the claims against him do not survive his death. Neither of these arguments have merit.

First, as an initial matter, Plaintiff acknowledges that an administrator must be appointed for the Estate of Challener in order to sue and effectively serve this Defendant. Plaintiff moved for the appointment of special administrator and requested to be heard on the matter at the initial

case management conference. *See* Dckt. 33, 39 at 4. The motion was denied without the

opportunity for argument.

Plaintiff intended to move for reconsideration, but the Court dismissed Plaintiff's claims

against all Defendants with leave to amend. Plaintiff's claims were reinstated, but the Court

stayed discovery. When the stay is lifted, Plaintiff intends to move for reconsideration to appoint

a special administrator for Defendant Challener.[5]

---

[5] Good cause exists for this Court to appoint a special administrator. This Court has the power to appoint a special representative or administrator for the Estate of Defendant Challener for the limited purpose of accepting service of process and receiving the claims presented by Plaintiff in connection with this civil action. District courts elsewhere routinely appoint administrators to defend suits in the circumstances presented here. *See, e.g.*, *Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1199 (N.D. Ill. 2013) (appointing city clerk as special representative for deceased defendant in wrongful conviction case); *Echavarria v. Roach et al.*, No. 16-cv-11118 (D. Mass.) (docket entry 92, text order dated 4/28/2017) (appointing son of deceased defendant in representative capacity in Section 1983 suit); *Bumpers v. Austal, USA, LLC.*, 2014 WL 12781154, at *1–2 (S.D. Ala. Nov. 18, 2014).

Moreover, sister circuits have recognized the power of the district court to appoint special administrators. *See e.g.*, *Stewart v. Special Administrator of the Estate of Mesrobian*, 559 Fed. App'x 543, 548 (7th Cir. 2014) (observing that the district court could appoint a special administrator even though the defendant died over two years before the suit was filed); *First Idaho Corp. v. Davis,* 867 F.2d 1241, 1242 (9th Cir. 1989) (upholding the district court's decision to order substitution of a personal representative where defendant had died in mortgage foreclosure action); *Kynaston v. United States,* 717 F.2d 506, 508 (10th Cir. 1983) (noting district court has discretion to appoint decedent's widow as plaintiff in a Federal Tort Claims Act suit); *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241 F.3d 154, 162 (2d Cir. 2001) (noting court of appeals has power to appoint a personal representative when a party has died in product liability case).

It would serve the interests of justice to appoint an administrator, because without one, Plaintiff's claims against Challener would abate, and that would be contrary to the purposes of Section 1983. *See Jaco v. Bloechle*, 739 F.2d 239, 245 (6th Cir. 1984) "(Surely, § 1983's further purpose to discourage official constitutional infringement would be threatened if Jaco were not permitted to champion her dead son's civil rights.").

Appointing a personal administrator would have no negative impact on the estate itself, as the Court could limit the appointment such that the administrator would not have any authority to change, modify, alter, or amend any of the final distribution of assets that have already occurred with respect to any prior estate. *See e.g.*, *See e.g.*, *Jackson v. City of Cleveland, et al.*, No. 15-CV-989 (N.D. Ohio) (docket entry 68-1) (Cuyahoga County Probate Court order appointing special administrator for estates of deceased defendants and limiting appointment to accepting service of process and receiving the claims presented by plaintiff in connection with his Section 1983 suit).

Moreover, Plaintiff's recovery from the estate would be limited to the extent of the County's obligation to indemnify any judgment entered against the estate. In any event, this issue is at best premature at this stage, and should not stop Plaintiff from entering the courthouse doors.

Second, Defendant Estate of Challener's argument that Plaintiff's claims do not survive Challener's death is incorrect. As explained in Plaintiff's Response to City and Police Defendants' Motions to Dismiss, under binding Sixth Circuit law, there is no question that the claims survive. *See* Dckt. 58 at 20. *Crabbs v. Scott* expressly rejected the argument that Challener makes here, holding instead that § 1983 claims are subject to the procedural rules of the state where they are brought that relate to personal injury actions, regardless of the specific type of injury alleged in the suit. *See* 880 F.3d 292, 296 (6th Cir. 2018).

Recently, the Sixth Circuit held in no uncertain terms:

> After Crabbs, all claims brought under § 1983 are to be treated as actions sounding in personal injury tort. Because Ohio Revised Code § 2305.21 provides that actions for personal injury survive the deaths of the tortfeasors, and that statute does not conflict with the laws of the United States...§ 1983 actions brought in Ohio survive the deaths of the tortfeasors.

*Jackson v. City of Cleveland*, 920 F.3d 340, 357 (6th Cir. 2019). Accordingly, if the Court appoints a representative for the Defendant Estate of Challener, all of the claims against it survive and should proceed to discovery.

## IV.  Plaintiff's Municipal Policy and Practice Claims are Viable

Plaintiff alleges that Cuyahoga County is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for policies and practices that caused Plaintiff's wrongful conviction. To survive a motion to dismiss a municipal liability claim, a plaintiff must plead (1) the violation of a federal right, (2) the defendants acted under color of state law, and (3) the municipality's policy or custom caused the violation to occur. *Bright v. Gallia Cty., Ohio*, 753 F.3d 639, 660 (6th Cir. 2014). Cuyahoga County seeks dismissal of Plaintiff's *Monell* claim, but its motion provides no basis for dismissal.

The bar for adequately pleading a *Monell* theory is not high. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69 (1993) (holding there is no heightened pleading requirement for *Monell* claims); *see also Dowling v. City of Barberton*, 2008 WL 4415931, at *3 (N.D. Ohio Sept. 24, 2008) ([T]survive a motion to dismiss, a *Monell* plaintiff need only plead a constitutional violation and allege that the violation was caused by an official policy or custom."). Nothing in *Twombly* or *Iqbal* changed this liberal *Monell* pleading standard. *Rolen v. City of Cleveland*, 2013 WL 12145960 (N.D. Ohio Aug. 7, 2013).  In the context of section 1983 municipal liability, district courts in the Sixth Circuit post-*Twombly* and *Iqbal* have continued to hold that plaintiffs are not held to a heightened pleading requirement, nor are they required to plead specific facts to prove the existence of a municipal policy. *See id.* at *4 ("Plaintiffs have alleged in detail the constitutional violations committed by City employees Mindek and Craska, and have clearly stated in their Complaint that these violations were caused by Defendant City of Cleveland's failure to adequately train its police officers in the application of probable cause to make arrests or the use of deadly force…Therefore, the court denies the City's Motion to Dismiss Plaintiffs' *Monell* claims."); *A.M.S. v. Steele*, 2012 WL 2130971 (S.D. Ohio June 8, 2012) (rejecting defendants' argument that plaintiffs need to plead specific facts with respect to the allegedly injurious policy in order to state a *Monell* claim, holding that plaintiffs' allegations identifying the policy was sufficient to support their *Monell* claim at the motion to dismiss stage); *Stack v. Karnes*, 750 F.Supp.2d 892, 899 (S.D. Ohio 2010) (finding Plaintiff's sole allegation that "Franklin County has historically implemented a policy or custom of failing to implement adequate training programs" stated a plausible *Monell* claim and therefore denying municipality's motion to dismiss).

31

Plaintiff sufficiently alleges that Cuyahoga County and/or Defendant Balraj implemented policies, practices, and customs that caused Plaintiff's injuries. Dckt. 45 at ¶¶ 100-120. The fact that three separate employees repeatedly engaged in serious misconduct against Plaintiff without any repercussion or intervention provides circumstantial evidence that they were acting under the policies, practices, and/or customs of Cuyahoga County and/or Defendant Balraj. *See e.g.*, *Jackson v. Marion Cty.*, 66 F.3d 151, 152 (7th Cir. 1995) (holding municipal liability may also be demonstrated indirectly "by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers."). Further evidence of the misconduct occurring under the auspices of municipal policy, practice, and/or custom is that municipal employees continue to withhold the fabricated evidence and/or destroyed that evidence in accord with municipal policy, practice, and/or custom. Dckt. 45 at ¶¶ 109, 144. At this early stage in the litigation, Plaintiff need only plead the existence of a policy or custom and that the policy or custom caused his injuries, which he has done. Accordingly, Cuyahoga County is not entitled to dismissal of the municipal liability claim.

## V.    Plaintiff's State-Law Claims Are Viable

### A.  Plaintiff's Ohio Malicious Prosecution Claims is Viable

Plaintiff sufficiently alleges malicious prosecution under Ohio law by claiming: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the [criminal] defendant." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 316 (6th Cir. 2005) (quoting *Trussell v. Gen. Motors Corp.*, 53 Ohio St. 3d 142, 559 N.E.2d 732, 735 (1990)). County Defendants claim that the dismissal

without prejudice of Plaintiff's underlying prosecution does not meet the third element. Dckt. 61 at 18-19. They base their argument on non-binding cases that suggest that so long as the criminal case may be refiled, the prior proceedings are not yet terminated in a party's favor.

As stated more fully above relating to Plaintiff's federal claim of deprivation of liberty without probable cause, Plaintiff's circumstances are different than if the prosecution had simply dismissed the charges without prejudice on its own volition. Instead, here the *courts* adjudicated that Plaintiff's conviction could not stand. That determination, coupled with the termination of all criminal charges against Plaintiff, constitute termination in his favor.[6] Finally, there is no evidence of reinstatement of any criminal charges against Plaintiff as required by the Ohio speedy trial act, which is evidence of termination in Plaintiff's favor. *See Ayers*, 2013 WL 775359, at *10.

### B.  Plaintiff's Ohio Intentional Infliction of Emotional Distress ("IIED") Claim is Viable

Under Ohio law, a plaintiff claiming IIED must show that "(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it." *Talley v. Family Dollar Stores of*

---

[6] If the Court disagrees, Plaintiff contends that any dismissal of his malicious prosecution claim under Ohio law should be without prejudice so that he can resubmit his claim after the statute of limitations runs (or some other adjudication occurs), which supports additional evidence of termination in his favor.

*Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.*, 698 N.E.2d 503, 506 (Ohio Ct. App. 1997)).

Given the allegations that Forensic Defendants withheld exculpatory evidence and knowingly fabricated false forensic evidence, Plaintiff presents sufficient allegations that they: (1) intended to cause Plaintiff serious emotional distress and that (2) it was extreme and outrageous. There is also sufficient evidence of causation: Challener and May's fabricated evidence was used against Plaintiff at his trial, which ultimately resulted in Plaintiff's conviction and wrongful imprisonment for 23 years. Unfortunately, Plaintiff was left utterly defenseless against this fabricated and false forensic evidence because Forensic Defendants hid the exculpatory evidence of its fabrication and hid and/or destroyed the exculpatory physical evidence itself. This caused Plaintiff serious emotional distress. *See Ayers*, 2013 WL 775359 (denying summary judgment to defendants who engaged in conduct intended to inculpate a man despite insufficient evidence of guilt).

County Defendants' argument against Plaintiff's IIED claim is based on their hope that the Court will accept their version of the facts and rule in their favor based on that, which is not proper. Plaintiff's well-pleaded allegations rule for purposes of determining the sufficiency of his claims. And those allegations are more than sufficient to establish IIED.

### C.  Plaintiff's Ohio Conspiracy Claim is Viable

County Defendants argue that Plaintiff's state law conspiracy claim should be dismissed because his federal claim fails. Dckt. 61 at 20. As explained above, *supra* Section II(C), because Plaintiff's federal conspiracy claim is viable, so too is his state law conspiracy claim.

**D.  Cuyahoga County is Not Immune from All of Plaintiff's State Law Claims**

Defendant Cuyahoga County argues that the Ohio Tort Immunity Act bars Plaintiff's state law claims of malicious prosecution, intentional infliction of emotional distress, and conspiracy asserted directly against the County. Dckt. 61 at 17-18. Plaintiff did not intend to assert these claims directly against the County. And, Plaintiff agrees that he cannot proceed against the County on direct claims against it for malicious prosecution, intentional infliction of emotional distress, and conspiracy under state law.[7]

Plaintiff does, however, state a viable indemnification claim against the County. The County argues for dismissal of Plaintiff's indemnification claim by asserting that only employees, and not tort claimants such as Plaintiff, can proceed directly against the City for indemnification. This argument should be rejected.

Courts in this district have held that, in cases like this, tort claimants may proceed directly against the municipality on an indemnification claim under Ohio law. In *Vaughan v. City of Shaker Heights*, 2011 WL 5966732 (N.D. Ohio Nov. 28, 2011*), aff'd in part, rev'd in part on other grounds¸* 514 F. App'x 611 (6th Cir. 2013), the plaintiff filed suit against the City of Shaker Heights and one of its detectives for violating his constitutional rights. One of Vaughan's claims was for indemnification against the City, based on its detective's conduct. The City sought to dismiss the indemnification claim, arguing that under § 2744.07(A)(1), only a

---

[7] Plaintiff notes, however, that under Section 2744.09(E), "[t]his chapter does not apply to, and shall not be construed to apply to … [c]ivil claims based upon alleged violations of the constitution or statutes of the United States." Ohio R.C. § 2744.09(E). Thus, while the County might enjoy immunity from liability for many of the torts committed by its employees, violations of the United States Constitution are not among them. *See Chaney v. Norwood*, 2010-Ohio-3434, ¶¶ 7-9, 937 N.E.2d 634, 636 (Chapter 2744 did not protect the City of Norwood from liability for claims under 42 U.S.C. § 1983 brought on the basis of actions by its employees); *Longsreth v. Franklin County Children Servs.*, 14 F.3d 601 (6th Cir. 1993) ("By its express terms, the Ohio Political Subdivision Tort Liability Act, Ohio Rev. Code § 2744.01, *et seq.*, does not bar actions brought under federal civil rights laws."); *Wohl v. Cleveland Bd. of Educ.*, 741 F. Supp. 688, 691 (N.D. Ohio June 15, 1990).

35

municipal employee could seek indemnification against its municipal employer. *Vaughan*, 2011 WL 5966732, at *4. But the court in *Vaughan* rejected the City's argument and permitted the plaintiff's indemnification claim to proceed under Ohio R.C. § 2744.07(A)(2). *See id.* at *5. The court reasoned that "[t]he clear statutory terms [of § 2744.07(A)(2)] require the City of Shaker Heights to indemnify Detective Hyams' conduct for compensatory damages if that conduct was carried out in good faith within the scope of his employment." *Id*. On that basis, Mr. Vaughan, as the claimant for those damages, had standing to assert the claim. Plaintiff is in the identical position here and should likewise be allowed to proceed.

Similarly, in *Ayers v. City of Cleveland*, 2013 WL 775359, at *16 (N.D. Ohio Feb. 25, 2013), Judge Gwin rejected the City of Cleveland's argument at summary judgment that Ayers could not maintain a cause of action for indemnification against the City. The court held:

> Requiring a political subdivision to indemnify its employee is different than imposing direct liability. The statutory text requires the City of Cleveland to indemnify Detective Cipo and Kovach if the conduct was carried out in good faith and within the scope of their employment. The Court rejects the notion that only Detectives Cipo and Kovach as employees can assert a claim for indemnification. To hold otherwise would defeat the statute['s] purposes of sparing municipal employees from having to pay a judgment prior to indemnification and to ensure members of the public harmed by municipal employees are made whole.

*Ayers*, 2014 WL 2042254, at *2 (citing *Vaughan* and *City of Memphis v. Roberts*, 528 S.W.2d 201 (Tenn. 1975) (holding that a similar statute permitted a judgment creditor to obtain indemnification directly from a city)). There, Judge Gwin simply concluded that the indemnification claim was not yet ripe at summary judgment, and dismissed it without prejudice for that reason alone. *Id*.[8]

---

[8] In a subsequent order, Judge Gwin declined to exercise supplemental jurisdiction over the state-law indemnification claim because the litigation over the federal claims had ended. *Ayers v. City of Cleveland*, 2014 WL 3449419, at *1-2 (N.D. Ohio July 11, 2014).

Allowing tort claimants such as Plaintiff to proceed directly against the County on an

indemnification claim is consistent with the purposes of Ohio's indemnification statute:

providing an employment benefit to municipal employees and providing "a form of public

insurance." *See City of Memphis v. Roberts*, 528 S.W.2d 201, 205 (Tenn. 1975) (construing a

similarly-worded state statute). The Ohio legislature's intent in enacting Section 2744.07(A)(2)

was to permit judgment creditors to proceed directly against a municipality to recover

indemnification proceeds. *See*, *e.g.*, *Vaughan*, 2011 WL 5966732, at *4; *Paolisso v. Edison

Local Bd. of Educ.*, 1992 WL 19829, at *1 (Ohio App. Ct. Feb. 5, 1992) (permitting the entry of

a judgment directly against a school district solely on the basis of the district's obligation to

indemnify its employee pursuant to § 2744.07); *Dixon v. Holden*, 923 S.W.2d 370 (Mo. App. Ct.

1996) (holding that a similar statute permitted a judgment creditor to obtain satisfaction of a

judgment directly from a state indemnity fund).

Permitting such recovery serves the statute's employee benefit purpose by sparing

municipal employees the often-prohibitive difficulty of having to pay a judgment prior to

receiving indemnification proceeds. In *Dixon*, for example, the court explained that the state

legislature did not intend to force government employees to deplete their savings, sell their

homes, or have their wages garnished prior to receiving indemnification. 923 S.W.2d at 378

(reasoning that "[i]f it is the true intent of this statute to protect state employees as much as

possible from the rigors of defending lawsuits borne out of state duties, then it defeats that

purpose to have the employee pay from his or her pocket, or from the estate's assets, before

being made whole."). Likewise, in *Roberts*, the court explained:

> We recoil at any suggestion that a policeman or fireman, or any other wage-
> earner during this era of inflation is required to submit to the hurt, humiliation and
> financial detriment of having his wages garnisheed, or of having to deplete his
> meager savings, or perhaps of having to sell his equity in his home in order to pay

37

a judgment against him, and then, but only then, recover the money so paid. We cannot believe the Legislature intended any such absurd result.

528 S.W.2d at 205. A contrary construction of section 2744.07 would subject municipal employees across the state to unwarranted burdens upon the entry of a judgment against them.

A construction of Section 2744.07 that permits Plaintiff to invoke a municipality's indemnification obligation serves the statute's secondary purpose of ensuring that members of the public harmed by municipal employees' tortious conduct will be made whole. *See Roberts*, 528 S.W.3d at 203. Here, unless Plaintiff is permitted to seek indemnification directly against Cuyahoga County, he may be unable to recover any of the damages from any judgment eventually awarded to compensate him for the extreme hardship he suffered as a result of County Defendants' misconduct.

In sum, Plaintiff's indemnification claim is entirely proper and should remain part of this case. At most, the claims could be dismissed only without prejudice, if the Court considers the claim premature because no judgment has yet been entered. *See*, *e.g.*, *Stengel v. Columbus*, 600 N.E.2d 248, 251 (Ohio Ct. App. 1991) ("plaintiff's claim for indemnity under R.C. 2744.07(A)(2) accrued … when the federal court judgment rendered against [the police officer] became final").

## CONCLUSION

Mr. King's wrongful conviction was a miscarriage of justice, in which the County Defendants played a large part. The Amended Complaint sufficiently alleges that the Forensic Defendants actively worked to accomplish the wrongful conviction by furnishing vital, but fabricated and false, forensic opinions and evidence. They then destroyed the physical evidence and/or withheld it so nobody could discover their actions. Defendant Cuyahoga County's policies and practices enabled that misconduct, and the truth, to remain unknown to prosecutors

and the defense. Plaintiff's claims against the County Defendants are viable; their motions should be denied.

RESPECTFULLY SUBMITTED,

/s/ Danielle Hamilton
*One of Plaintiff's Attorneys*

**<u>CERTIFICATE OF SERVICE</u>**

I, Danielle Hamilton, certify that the foregoing motion was sent via CM/ECF to all counsel of record.

<u>/s/ Danielle Hamilton</u>
*One of Plaintiff's Attorneys*